Susan M. VLIES, Petitioner-Respondent,

v.

Adam L. BROOKMAN, Respondent-Appellant.

Court of Appeals

*No. 2004AP315. Submitted on briefs May 13, 2005.
—Decided June 15, 2005.*

2005 WI App 158

(Also reported in 701 N.W.2d 642.)

414

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carlton D. Stansbury* and *Carrie L. Watkins* of *Burbach & Stansbury, S.C.*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Gregory J. Banchy* and *Roberta Steiner* of *Halling & Cayo, S.C.*, Milwaukee.

A nonparty brief was filed by *Linda S. Balisle*, Madison, for American Academy of Matrimonial Lawyers-Wisconsin Chapter.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J.  Adam L. Brookman appeals

from a judgment of divorce awarding family support to Susan M. Vlies. Brookman contends that the circuit court's decision to award family support in lieu of child support and maintenance was improper. He argues that the circuit court did not apply the relevant statutory factors to the facts of the case and therefore erroneously exercised its discretion. We agree and reverse the family support order provision of the judgment, remanding it with directions. Brookman also argues that the court erred when it required him to maintain life insurance for the children's benefit because it had no authority to do so. We disagree; however, we remand the issue of life insurance coverage for consideration in the context of the court's child support analysis. Finally, Brookman contends that the circuit court erred when it ordered him to contribute to Vlies's attorney's fees. We agree and remand the award of attorney's fees for further proceedings.

## FACTS

¶ 2.  Vlies and Brookman were married on May 15, 1988, in New Jersey. They have three children. As of the date of the divorce, the children were minors:  thirteen, twelve, and eight years old. Vlies filed for divorce on November 29, 2001. The circuit court appointed a guardian ad litem for the children in October 2002, and the parties stipulated to mediation in April 2003. Mediation was unsuccessful and a six-day trial ensued.

¶ 3.  Vlies worked full time outside the home until the birth of the parties' second child in 1991. She worked part time until 1995, when the parties moved to Wisconsin. Vlies then became a stay-at-home mother and managed the household. At the time of the divorce, she had no outside income but had obtained her teaching certification, and the parties stipulated an imputed

annual income to her of $28,000. During the entire course of the marriage, Brookman worked full time as a lawyer in private practice. His income at the time of the divorce included an annual base salary of $100,000 plus two annual bonus payments determined by his employer's compensation committee and paid in December of each year.

¶ 4. Upon dissolution of the marriage, the circuit court ordered joint legal custody of the children and gave primary placement to Vlies. Brookman has placement approximately 36% of the time, with additional placement for holidays, vacations and extended school breaks. The parties estimate that over the course of a year, the children are in Brookman's care approximately 40% of the time. The court held open the matters of child support and maintenance to Vlies, ordering family support as an alternative. The court held that Brookman must pay family support of $7500 per month for ten years.

¶ 5. The judgment of divorce addressed medical and health care expenses, as well as the assets and debts of the parties. The circuit court ordered Brookman to maintain a total of $750,000 in life insurance coverage, with the three children or a trust for their benefit named as irrevocable beneficiaries. The court incorporated several other holdings in the judgment of divorce, none of which are relevant to this appeal.

## DISCUSSION

### Family Support

¶ 6. Brookman appeals from the circuit court's family support award to Vlies of $7500 per month for ten years. The court adopted Vlies's proposed family

support award, but extended it two years beyond the eight she had proposed. Brookman argues that the court failed to provide a sufficient rationale for its family support award.

¶ 7. At our invitation, the Wisconsin Chapter of the American Academy of Matrimonial Lawyers filed an amicus curiae brief.[1] Before turning to the merits of Brookman's argument regarding the family support award, we consider the impetus for and practical implications of family support as a substitute for child support and maintenance. The amicus brief sets forth a comprehensive history of family support in Wisconsin, which provides a fitting backdrop for our analysis.

■

¶ 8. The 1977 Divorce Reform Act provided family courts with the option to award family support as an alternative to child support and maintenance. 1977 Wis. Laws, ch. 105, § 43. The family support statute states in relevant part: "The court may make a financial order designated 'family support' as a substitute for child support orders under s. 767.25 and maintenance payment orders under s. 767.26." Wis. Stat. § 767.261 (2003–04).[2] The legislature determined that family support should be "based upon the same criteria applicable to those separate orders [for child support and maintenance]." Legislative Council Note, 1977, Wis. Stat. Ann. § 767.261 (West 2001). The family support alternative,

---

[1] The amicus curiae brief was responsive to the issues set forth in our order of February 18, 2005. We appreciate the contribution of the Wisconsin Chapter of the American Academy of Matrimonial Lawyers and its president, Attorney Linda S. Balisle.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

therefore, encompasses the support objectives of its component parts, child support and maintenance, in a single obligation.

¶ 9. The legislature originally created the family support option to allow parties to take advantage of "significant federal income tax advantages" under *Commissioner of Internal Revenue v. Lester*, 366 U.S. 299 (1961). Legislative Council Note, 1977, WIS. STAT. ANN. § 767.261 (West 2001). *Lester* was superseded by I.R.C. § 71, as amended by the Deficit Reduction Act of 1984, Pub. L. No. 98–369, § 422(a), 98 Stat. 795 (1984),[3] which provides that child support is not taxable to the payee or deductible to the payer if it is "fixed" (set as a specific amount) by the support order. *See* I.R.C. § 71(c). The federal tax code provides in relevant part:

**(a) General rule.**—Gross income includes amounts received as alimony or separate maintenance payments.

. . . .

**(c) Payments to support children.**—

**(1) In general.**—Subsection (a) shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse.

**(2) Treatment of certain reductions related to contingencies involving child.**—For purposes of paragraph (1), if any amount specified in the instrument will be reduced—

**(A)** on the happening of a contingency specified in

---

[3] All subsequent references to the Internal Revenue Code are to the 2005 version.

the instrument relating to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency), or

**(B)** at a time which can clearly be associated with a contingency of a kind specified in subparagraph (A),

an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse.

I.R.C. § 71(a), (c).

■

¶ 10.   A "fixed" award of family support operates for tax purposes like maintenance. *See* I.R.C. § 215 (maintenance is deductible to the payer, and taxable to the recipient). Both the child support and the maintenance components of family support are taxable to the payee. In this way, family support shifts the taxable income from the payer to the payee. The amicus points out:

> When most payer spouses earned virtually all of the family income while most recipient spouses had minimal income, family support maximized the amount of income available to a family by reallocating tax liability. But as the rate of taxation has declined and as the gap between most parties' tax brackets has shrunk, the benefits of family support have also dwindled for the majority of families.

¶ 11.   Potential tax penalties associated with family support have increased since the 1977 Divorce Reform Act. Under I.R.C. § 71(c)(2), a reduction in family support that is triggered by a child-related contingency can presumptively recharacterize that portion of the payment and convert the amount to nondeductible child support. The payer would then owe taxes

on that portion of the support deemed to be child support, retroactive to the date of the initial family support order. *See* I.R.C. § 71(c)(2)(B). The amicus asserts, "The enormity of the potential past due taxes, interest, and penalties together with the complexity of the child-related contingencies (particularly in families with two or more children) demands great caution in using family support."

¶ 12. Here, Brookman raises two issues regarding the circuit court's family support award. First, he argues that the court mistakenly concluded that family support offered clear tax advantages and therefore erroneously opted for family support instead of child support and maintenance. Next, he argues that the circuit court failed to demonstrate a reasoned process for setting the amount and term of the family support. Vlies responds that the court's decisions regarding family support, including its amount and duration, are supported by the record and based on evidence adduced at trial.

¶ 13. We will overturn a circuit court's family support award only if there was an erroneous exercise of discretion. *Jasper v. Jasper*, 107 Wis. 2d 59, 63, 318 N.W.2d 792 (1982). A discretionary decision, to be sustained, must be based upon the facts of record and reliance on the appropriate standard of law. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). "[M]ost importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.*

¶ 14. Although WIS. STAT. § 767.261 does not enumerate specific factors for calculating family support, our legislature did not envision an unfettered exercise of discretion by the circuit court. The legislature determined that such an award should be based on the same criteria used to fashion child support and maintenance orders. Legislative Council Note, 1977, WIS. STAT. ANN. § 767.261 (West 2001). Accordingly, the circuit court must separately calculate child support and maintenance as a condition precedent to calculating family support.

¶ 15. A circuit court should use the factors presented in WIS. STAT. § 767.25 (child support) and the support percentage guidelines provided in WIS. ADMIN. CODE § DWD ch. 40 (Dec. 2003),[4] together with WIS. STAT. § 767.26 (maintenance), when ordering family support. More specifically, a court must calculate child support according to the percentage guidelines or provide a rationale for deviating from the guidelines. *See* § 767.25(1j), (1n). Next, the court must determine the amount of maintenance, keeping in mind two objectives: (1) to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective), and (2) to ensure a fair and equitable financial arrangement between the parties (the fairness objective). *LaRocque v. LaRocque*, 139 Wis. 2d 23, 32–33, 406 N.W.2d 736 (1987). The circuit court must then express these two components as a

---

[4] Under WIS. STAT. § 767.25(1j), the court "shall determine child support payments by using the percentage standard established by the [DWD] . . . ." All references to the Wisconsin Administrative Code are to the December 2003 version.

family support obligation in order to provide the parties with the associated tax benefits.

¶ 16. If the circuit court applies the percentage guidelines when setting child support, it must set family support at an amount that results in a net payment, after state and federal taxes are paid, of no less than the child support as calculated under the guidelines. WIS. ADMIN. CODE § DWD 40.03(7). At a minimum, the court must increase the amount of family support to ensure that the recipient spouse receives as much total income as would have been available from a nontaxable award of child support. Of course, courts retain the discretion to deviate from the percentage guidelines, provided they demonstrate a fact-based rationale for doing so. *See* WIS. STAT. § 767.25(1m), (1n).

¶ 17. We turn to the circuit court's rationale for awarding family support of $7500 per month for ten years. The court stated:

[I]n this case, I've considered the testimony of [Scott Franklin, C.P.A.]. I believe the advantages to the parties of utilizing family support in place of child support and maintenance are clear. I've considered the factors in [WIS. STAT. §§] 767.25 and 767.26 governing child support and maintenance.

In this case the respondent earns an excellent living. There is no doubt about it. The resources of the parties mainly exist in the family home. And that there is no other individual that the party is obligated to support. The marriage was 13 years at the time of separation, 15 years currently.

Additionally, the three children have really enjoyed a standard of living that can only be described as

outstanding. They really haven't wanted for anything up until the time of the divorce. And even after the divorce was initiated, they still were able to do the activities and to live in the community that they were residing in . . . .

Ms. Vlies hasn't worked outside of the home since shortly after [their second child] was born, and Mr. Brookman has a far greater earning capacity than Ms. Vlies, and in all likelihood I think will always have a greater earning capacity . . . .

I doubt that it's reasonable that she can become self-supporting at a standard of living comparable to that enjoyed by the parties, and I think that family support plays into this because of the tax consequences.

¶ 18.  The circuit court referenced the appropriate statutes, discussed the earning capacity of each party, considered the length of the marriage and role each party played in the marriage, and opined on Vlies's potential to become self-supporting. These are all relevant factors for consideration; however, the court did not explain how these factors led to a family support award of $7500 per month for ten years.

¶ 19.  Brookman asserts that even if a court makes detailed findings as to all of the factors for family support, the court erroneously exercises its discretion if it neglects to provide a rational explanation of how its findings lead to the support award. *See King v. King*, 224 Wis. 2d 235, 252, 590 N.W.2d 480 (1999). We agree. In *Corliss v. Corliss*, 107 Wis. 2d 338, 348, 320 N.W.2d 219 (Ct. App. 1982), we took up the issue of family support and the balancing of two competing interests:  the recipient's need for support and the payer's ability to pay. There, we determined that the record

contained evidence regarding the needs of the recipient spouse and the children as well as the payer spouse's ability to pay; however, there was no connection between the evidence and the amount of family support ordered by the circuit court. *Id.* at 349. In other words, "the court made no findings as to need and ability to pay *as a factual basis for the exercise of its discretion.*" *Id.* (emphasis added).

¶ 20. Vlies counters that we are obligated to uphold the circuit court's determination if our examination of the record facts supports the court's exercise of discretion. *See Franke v. Franke,* 2004 WI 8, ¶ 55, 268 Wis. 2d 360, 674 N.W.2d 832. Vlies refers to the "voluminous record" on appeal to support her contention that the facts support the circuit court's decision. She argues that we would be placing an "unsustainable burden" on the circuit court were we to require that court to "set forth in some sort of all encompassing, comprehensive laundry list *each and every* piece of evidence it considered in reaching *each and every* one of its legal conclusions." This exaggerates and mischaracterizes the issue. Our legislature placed the onus on circuit courts to consider the statutory factors underlying child support and maintenance. *See* WIS. STAT. §§ 767.25, 767.26. Our legislature also determined that child support awards should be crafted according to administrative guidelines created by the Department of Workforce Development. *See* § 767.25(1j), (1m).

¶ 21. Although the record is indeed large, and substantial financial data are included, we are left to speculate about how the facts influenced the circuit court's decision. For example, Vlies submitted a financial disclosure form indicating her annual net expenses to be approximately $92,292 or $7691 per month. During the term of the marriage, however, the entire

family of five lived on Brookman's annual base salary of $100,000 and used the bonuses for larger, nonrecurring expenses. The court ordered Brookman to pay annual family support of $90,000, yet Brookman's annual base salary, before taxes, is $100,000. Brookman has historically received bonus compensation each December as determined by his employer's compensation committee. Nonetheless, our review of the record indicates that the circuit court's award of fixed, monthly family support of $7500 is in excess of Brookman's monthly net income of $5063. The record facts, in the absence of a complete analysis by the circuit court, leave us no choice but to wonder about the court's rationale.

¶ 22.   There is no indication that the circuit court calculated child support under the Wis. Admin. Code § DWD 40.03(1) percentage guidelines or that it alternatively determined a rational basis for deviating from the guidelines. The record does not demonstrate whether the family support award complies with § DWD 40.03(7), which requires net family support to meet or exceed the amount of child support that would have been available under the percentage guidelines. Consequently, because the court must determine child support payments before calculating a party's maintenance obligation, the court's maintenance considerations in the absence of a full child support computation were premature. *See* § DWD 40.03(6).

¶ 23.   The legislature did not intend for the circuit court to bypass statutory considerations associated with child support and maintenance when it enacted the family support statute; rather, it intended family support "as a substitute for maintenance payments and child support orders, and *based upon the same criteria applicable to those separate orders*." Legislative Council

Note, 1977, WIS. STAT. ANN. § 767.261 (West 2001) (emphasis added). We note that the court did reference WIS. STAT. §§ 767.25 and 767.26 in its decision. But a complete analysis should address the connection between the statutory factors and the ultimate support award. Courts are not permitted to acknowledge the statutory factors in form only to disregard them in substance and practical effect. *King*, 224 Wis. 2d at 252.

¶ 24.   Because we cannot discern from the record how the circuit court arrived at the amount and duration of family support or what tax implications influenced the court, we set aside the family support award and remand the matter to the circuit court for an analysis in conformity with the methodology set forth above.

## *Life Insurance*

¶ 25.   Brookman next argues that the circuit court had no authority to require him to maintain life insurance for the children's benefit. Here the court directed that Brookman maintain $750,000 of coverage, with the three children or a trust for their benefit as irrevocable beneficiaries. Brookman maintains that the circuit court has no authority other than that expressly granted by statute. He cites to *Groh v. Groh*, 110 Wis. 2d 117, 122, 327 N.W.2d 655 (1983), for support of his contention that without direct statutory authority, the circuit court had no power to require him to maintain life insurance for the benefit of his children. In *Groh*, our supreme court stated that "where the legislature has set forth a plan or scheme as to the manner and limitation of the court's exercise of

its jurisdiction, that expression of the legislative will must be carried out and the power limitations adhered to." *Id.* at 123.

¶ 26.    Our supreme court has observed, however, that life insurance coverage may be part of the court's child support analysis where the record so demonstrates. In *Vaccaro v. Vaccaro*, 67 Wis. 2d 477, 480, 227 N.W.2d 62 (1975), the supreme court considered whether life insurance policies, and the associated cash value, were part of the division of property or part of child support. The supreme court upheld the lower court's characterization of life insurance as part of the child support award. *Id.* at 484. There, the husband had carried life insurance pursuant to a stipulation incorporated into a judgment of divorce that required him to maintain $48,000 of life insurance coverage and name his three children as irrevocable beneficiaries. *Id.* at 479. The judgment was later modified by stipulation to require $40,000 of life insurance coverage until the youngest child reached the age of twenty-one. *Id.* The supreme court determined that the terms of the judgment allowing modification of the policies and the designation of the children as beneficiaries clearly demonstrated the life insurance was for support of the children in the event of their father's death. *Id.* at 483.

¶ 27.    More recently, we addressed the issue of whether a clause requiring one party to maintain life insurance with the children as beneficiaries survived the termination of the payer parent's support obligation. *Barnes v. Hall*, 170 Wis. 2d 1, 5, 486 N.W.2d 575 (Ct. App. 1992). There the divorce judgment required the husband to maintain a $10,000 life insurance policy for the benefit of his two minor children. *Id.* He did so, but surrendered the policy shortly before his

death. *Id.* at 6. The two children, now adults, each claimed $5000 against the estate of their deceased father. *Id.* We held that "because the law does not allow estate planning in a divorce for purposes of creating a property benefit for adult children, the clause at issue, as a matter of law, must be treated as one relating to child support." *Id.* at 13.

¶ 28.  We acknowledge Brookman's observation that the above cases addressed stipulated terms that were then incorporated into the divorce judgment. In contrast, Brookman and Vlies did not stipulate to the matter. We note, however, that each party submitted a proposed judgment and both included provisions whereby they would be required to carry life insurance for the benefit of the children. From this, we conclude that the parties agreed to the concept of life insurance for the benefit of their children, if not to the specific terms.

¶ 29.  Brookman also submits that the circuit court's directive regarding life insurance cannot be considered part of the child support analysis because the benefit extends into the children's adulthood. We agree that the terms of the provision are problematic, but it is an oversight easily remedied on remand. We have no reservation in concluding that the circuit court intended to treat the life insurance coverage as an issue related to child support. The court specified that Brookman name the children or a trust for their benefit as irrevocable beneficiaries. Further, it expressly stated that the purpose of the life insurance was to be a "hedge against family support or child support." Accordingly, we are compelled to remand the issue of life insurance to the circuit court for further consideration in the context of

its child support analysis.[5] As with any child support ruling, the circuit court should state the reasons for its ruling after considering the relevant factors bearing on the question, including the needs of the child and the payer's ability to pay.

*Attorney's Fees*

¶ 30. Finally, Brookman contests the circuit court's decision to award attorney's fees to Vlies. He contends the court failed to exercise its discretion when it simply adopted verbatim Vlies's proposal regarding a contribution to her attorney's fees. We agree.

¶ 31. The circuit court may, in its discretion, award attorney fees to one party based on the financial resources available to each of the parties. Wis. Stat. § 767.262(1). This is appropriate if the paying party has caused additional fees by overtrial or because the paying party refused to provide information which would have allowed swifter resolution of the matter. *See Randall v. Randall*, 2000 WI App 98, ¶ 22, 235 Wis. 2d 1, 612 N.W.2d 737.

¶ 32. Here, the circuit court ordered Brookman to pay $2000 toward Vlies's attorney's fees. In doing so, the court simply stated that it was adopting verbatim paragraph fourteen of Vlies's proposed judgment. Paragraph fourteen of Vlies's proposed judgment stated: "Petitioner is awarded the sum of $2,000 as a

---

[5] The amicus posits that life insurance may be considered as a variable cost under Wis. Admin. Code § DWD 40.02(29). The parties have neither raised nor argued this and therefore we make no ruling as to the merits of this approach. The parties are free to argue the issue on remand if they choose to do so.

contribution to her attorney's fees, to be paid on or before September 30, 2003. Each of the parties shall be responsible for the payment of his/her own attorney's fees."

¶ 33. Brookman hypothesizes that the circuit court may have awarded attorney's fees to Vlies for the time her attorney spent drafting a postmediation settlement agreement that was ultimately rejected. Vlies hypothesizes that the award of attorney's fees is based on the court's finding that there is a "significant disparity between the parties with regard to their earning capacity." The circuit court, however, provided no guidance in this regard. The function of an appellate court is not to exercise discretion in the first place, but to review the circuit court's exercise of discretion. *See Franke*, 268 Wis. 2d 360, ¶ 55. Because we are left to speculate on the court's rationale for requiring Brookman to contribute $2000 toward Vlies's attorney's fees, we reverse and remand the issue to the circuit court.

## CONCLUSION

¶ 34. We reverse those portions of the judgment of divorce pertaining to family support, life insurance, and attorney's fees. We conclude that all three issues must be remanded in order for the circuit court to set forth its rationale for each, reconsidering its rulings if appropriate. In particular, we draw the circuit court's attention to its family support award and the methodology for calculating family support set forth above. We agree with the amicus that "[t]he enormity of the potential past due taxes, interest, and penalties together with the complexity of the child-related contingencies [under I.R.C. § 71] (particularly in families with two or more

431

children) demands great caution in using family support." Further, we remand the issue of life insurance coverage for consideration in the context of the court's child support analysis. Finally, we reverse the award of attorney's fees in favor of Vlies and remand to the court for further consideration in accordance with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.