COURT OF APPEALS
DECISION
DATED AND FILED

July 25, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2017AP1006**
**2017AP2214**

Cir. Ct. No. 2011FA351

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

NO. 2017AP1006

IN RE THE MARRIAGE OF:

ANGELA JEAN LA BRI,

PETITIONER-RESPONDENT-CROSS-APPELLANT,

V.

JEFFREY ALAN LA BRI,

RESPONDENT-APPELLANT-CROSS-RESPONDENT.

No. **2017AP2214**

IN RE THE MARRIAGE OF:

ANGELA JEAN STRUNSEE P/K/A ANGELA JEAN LA BRI,

PETITIONER-RESPONDENT,

V.

JEFFREY ALAN LA BRI,

RESPONDENT-APPELLANT.

APPEALS and CROSS-APPEAL from a judgment and an order of the circuit court for Washington County: MICHAEL O. BOHREN, Judge. *Affirmed.*

Before Lundsten, P.J., Blanchard and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Angela Strunsee (formerly Angela La Bri) and Jeffrey La Bri were divorced in the Washington County Circuit Court.[1] Jeffrey appeals rulings of the circuit court regarding the division of the property of the parties and the court's award of family support. Angela cross-appeals rulings of

---

[1] For convenience, we will refer to the parties by their first names.

the circuit court regarding the division of the property of the parties.[2]  We affirm all the rulings of the circuit court.

## BACKGROUND

¶2      Angela and Jeffrey were married in 1993 and divorced after a 23-year marriage.  Angela and Jeffrey had one minor child at the time of the divorce.

¶3      By the time the divorce was initiated, the parties had a marital estate valued in the millions of dollars, and Jeffrey had income of several hundred thousand dollars per year.  A lengthy trial was held in the circuit court in which there were numerous contested issues relating to legal custody and physical placement of their child, property division, and family support owed from Jeffrey to Angela.

¶4      We will mention other material facts in the discussion that follows.

## DISCUSSION

### I.  Standard of Review.

¶5      Decisions concerning the division of a marital estate and family support awards are both committed to the circuit court's discretion.  *See **Sellers v. Sellers***, 201 Wis. 2d 578, 585, 549 N.W.2d 481 (Ct. App. 1996).  This court affirms a circuit court's discretionary determination if the court made a rational, reasoned decision and applied the correct legal standard to the facts of record.  ***Id.***

---

[2] These cases have been consolidated for purposes of briefing and disposition.

¶6 A circuit court's findings of fact are reviewed under a clearly erroneous standard. WIS. STAT. § 805.17(2) (2017-18).[3] A finding is clearly erroneous if it is against the great weight and clear preponderance of the evidence. *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748. The circuit court's findings will not be overturned on appeal unless those are inherently or patently incredible, or in conflict with the uniform course of nature or with fully established or conceded facts. *Global Steel Prods. Corp. v. Ecklund*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. "[E]ven though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (quoting *Reusch v. Roob*, 2000 WI App 76, ¶8, 234 Wis. 2d 270, 610 N.W.2d 168). Moreover, appellate courts search the record for evidence supporting the circuit court's decision. *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988).

¶7 We now consider the issues raised in Jeffrey's appeal.

## II. Jeffrey's Appeal.

### A. Admissibility of Expert Testimony.

¶8 Jeffrey asserts that the circuit court erred in failing to exclude the testimony of two expert witnesses called by Angela regarding the valuation of Jeffrey's business, the La Bri Group. We reject Jeffrey's argument.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶9    The La Bri Group is referred to by the parties as an "investment advisory business." Prior to trial, Jeffrey filed a motion in limine to exclude the testimony of two witnesses retained by Angela, Jeffrey Schaff and David Grau. Schaff and Grau worked together in that Schaff gathered information regarding the La Bri Group, and Grau conducted the valuation of the business. Jeffrey's motion contended that the testimony of Schaff and Grau did not meet the requisite standards for the admissibility of expert testimony as required by WIS. STAT. § 907.02(1).

¶10    For purposes of appeal, the pertinent basis for Jeffrey's motion in limine was that neither Schaff nor Grau had "any recognized credentials to value businesses and, therefore, [neither had] the knowledge, skill, experience, training or education required by [WIS. STAT.] § 907.02(1)."[4] The circuit court took that motion under advisement.

¶11    Schaff was called to testify at trial, and the following exchange took place before Schaff testified:

> [Jeffrey]: Your Honor, I will remind you that the Court took under advisement the **_Daubert_** issue with regard to this witness.
>
> THE COURT: Refresh my memory of what the **_Daubert_** issue was.
>
> [Jeffrey]: _Just in regard to Mr. Schaff not being qualified in any way to represent himself as a business valuation expert. He carries no credentials at all in the field._

---

[4] Jeffrey's motion in limine stated three bases for the relief requested. Two of those bases, that the written report by Schaff made an incorrect factual statement on a specific point, and that neither Schaff nor Grau spoke to Jeffrey before coming to their opinions, are not advanced on appeal. So, we need not consider those bases for that reason.

5

> THE COURT: Well, at this point I will take the testimony, including the credentials, and then we'll go through testimony and the cross-examination. After I have heard all the testimony, I will rule as to the [admissibility] of the testimony.

(Emphasis added.) Jeffrey offered no further objection to Schaff's testimony or the exhibits entered through Schaff's testimony (with one exception not relevant to our analysis). Jeffrey did not renew any objection, or make a motion to strike, at the conclusion of Schaff's testimony.

¶12 At trial, Jeffrey did not raise any contemporaneous objection to Grau's trial testimony or remind the court about Jeffrey's pre-trial motion in limine seeking an order barring Grau's testimony.

¶13 The circuit court did not expressly rule on Jeffrey's motion in limine or Jeffrey's objections to Schaff's testimony made at trial. The circuit court found that the testimony of both Schaff and Grau was "credible" and accepted Grau's opinion regarding the value of the La Bri Group. We consider this as an implicit ruling of the circuit court that Schaff and Grau were qualified to present expert testimony under WIS. STAT. § 907.02(1).

¶14 A circuit court's determination on the admissibility of expert testimony is reviewed for an erroneous exercise of discretion. *State v. Jones*, 2018 WI 44, ¶28, 381 Wis. 2d 284, 911 N.W.2d 97. We now consider Jeffrey's arguments that have been preserved for appeal on this issue.

¶15 A motion in limine, such as the motion filed by Jeffrey, is sufficient to preserve, for purposes of appeal, an objection to the admissibility of evidence. *State v. Bergeron*, 162 Wis. 2d 521, 529, 470 N.W.2d 322 (Ct. App. 1991). However, on appeal Jeffrey is restricted to those arguments raised in the motion in

limine. *See State v. Bustamante*, 201 Wis. 2d 562, 573, 549 N.W.2d 746 (Ct. App. 1996) (quoting *Bergeron*, 162 Wis. 2d at 529 ("[I]f the issue raised by appeal is different in fact or law from that presented by the motion *in limine*, then waiver may be found if no objection was made at trial.")); *see also McClelland v. State*, 84 Wis. 2d 145, 157-58, 267 N.W.2d 843 (1978) (an appellant may lose the right to complain that the circuit court failed to exercise discretion if the appellant failed to request the court to do so).

¶16    As already described, the only basis for the motion in limine that is also raised on appeal is that Schaff and Grau did not have sufficient credentials to be qualified to give admissible expert testimony on the valuation of the La Bri Group.[5]    Therefore, Jeffrey's motion in limine preserved his right to appeal the question of the admissibility of the testimony of Schaff and Grau based on their asserted lack of credentials.    As a result, we do not consider Jeffrey's appellate arguments directed at testimony to which Jeffrey did not object either in the motion in limine or at trial. *See Bustamante*, 201 Wis. 2d at 573.

¶17    In this court, Jeffrey makes no contention in support of that remaining argument other than his conclusory statement that, because they hold no business valuation credentials, Schaff and Grau are not qualified to give expert testimony under WIS. STAT. § 907.02(1).    In response, Angela cites to numerous portions of the trial testimony which show that Schaff and Grau have substantial experience over many years in which each gathered data regarding, and valued, businesses similar to the La Bri Group.    In reply, Jeffrey does not contend that

---

[5] Also, as noted, the only objection stated by Jeffrey at trial in regard to the admissibility of the testimony of either Schaff or Grau was his argument that Schaff was not qualified as an expert because he has no credentials in the field.

7

Angela's cites to the record are incorrect, and Jeffrey cites to no part of the trial record in support of his argument. Rather, in reply Jeffrey only restates his conclusion that "[t]he record indicates that Angela's witnesses enjoy no such specific certifications as a business appraiser."

¶18    We conclude that the record establishes that Schaff and Grau have substantial experience gathering data regarding, and valuing, businesses similar to the La Bri Group. Accordingly, we reject Jeffrey's argument that the circuit court's implicit decision on the admissibility of those expert opinions was an error.

### B. Circuit Court's Reliance on Financial Information Regarding the La Bri Group.

¶19    Jeffrey argues that the circuit court erred in accepting Grau's opinion regarding the value of the La Bri Group in that the circuit court relied on the opinions of Schaff and Grau regarding the "trailing twelve."[6] We reject Jeffrey's argument.

¶20    The parties agree that the "trailing twelve" refers to the twelve months of revenue generated by the La Bri Group immediately prior to the date of the valuation of the business. Both Angela's experts and Jeffrey's expert used the "trailing twelve" as a basis to value the La Bri Group. However, the experts disagreed on the revenue which should be included in the "trailing twelve." Grau and Schaff included in the "trailing twelve" the revenue from an independent contractor associated with the La Bri Group, whereas Jeffrey's expert excluded

---

[6] Jeffrey's argument is framed as the circuit court's purported "erroneous exercise of discretion" but, as will be seen, the issue is properly framed as a credibility determination by the circuit court.

8

that from the "trailing twelve." Put in terms of dollar amounts, Schaff provided Grau with a trailing twelve number of $1,312,806, and Grau relied on that number in his valuation. Jeffrey's expert opined that the trailing twelve was $1,167,207. The difference was about $145,000. The parties do not dispute that the difference in the amount of revenue considered to be in the "trailing twelve" made a material difference in the value of the business as determined by the circuit court.

¶21    A circuit court's determination of the value of an asset is a finding of fact that this court will not set aside unless the finding is clearly erroneous. *Lellman v. Mott*, 204 Wis. 2d 166, 171, 554 N.W.2d 525 (Ct. App. 1996). When there is more than one reasonable inference that can be drawn from the evidence, we accept the fact chosen by the trier of fact because the circuit court determines the weight and credibility of a witness's testimony. *DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 583, 445 N.W.2d 676 (Ct. App. 1989). The circuit court is the "arbiter of credibility," and it was up to the circuit court to accept "the testimony of one expert over that of another expert …." *Schorer v. Schorer*, 177 Wis. 2d 387, 397, 501 N.W.2d 916 (Ct. App. 1993).

¶22    In determining the value of the La Bri Group, the circuit court recognized the difference between the "trailing twelve" computations of the experts. The court further noted that the divergence in those approaches yielded a difference in the value of the La Bri Group of $1.3 Million; that is, the value of the La Bri Group assigned by Grau was $1.3 Million more than the value assigned by Jeffrey's expert. We need not set out the details here, but the circuit court noted various reasons why it found Grau's valuation of the La Bri Group to be "more credible" than that of Jeffrey's expert.

9

¶23    On appeal, Jeffrey does not explain why the circuit court's finding that Angela's experts' opinions were more credible than Jeffrey's expert's opinions, and the circuit court's implicit acceptance of Angela's expert's opinion about the "trailing twelve," was an error.  Instead, Jeffrey only repeats that the circuit court erroneously exercised its discretion because it disagreed with his expert.  The opinions of the experts differed as to why the trailing twelve should include, or not include, the revenue from the independent contractor.  It was up to the circuit court to decide which opinion was more credible.  We see no reason to overturn that decision based on any argument from Jeffrey.  Therefore, that exercise of discretion by the circuit court is affirmed.[7]

## C. Other Potential Arguments Regarding the Valuation of the La Bri Group.

¶24    Jeffrey makes other statements regarding the circuit court's determination of the value of the La Bri Group.  Jeffrey seems to focus on three points:  (1) One portion of Grau's report regarding the value of the La Bri Group gave a range of possible values for the sale of that entity whereas Jeffrey's expert gave only one value throughout his testimony; (2) Grau opined about the most likely method of financing a purchase of the La Bri Group; (3) Grau considered Jeffrey's past annual compensation of $197,000 in determining the value of the La Bri Group.

---

[7] In the final sentence of Jeffrey's brief in chief regarding this issue, Jeffrey asserts that "revenue figures" from 2010 to 2015 relied on by Angela's experts "were wrong."  This assertion is not developed as an argument connected to facts noted anywhere else in the brief and has no citation to the record.  Therefore, we reject this assertion as an undeveloped argument and do not consider it.  *See* **State v. McMorris**, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record").

¶25     We fail to discern any developed argument in these statements from Jeffrey. That is, he fails to develop any argument concerning why the circuit court's determination of the value of the La Bri Group was an error. Without a developed argument, we need not consider these points further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals will not consider undeveloped arguments).

**D.  Income Taxes Owed for 2015 and 2016.**

¶26     Jeffrey next argues that the circuit court erred by not ordering that Angela be solely responsible for payment of the income taxes owed by the parties for the years 2015 and 2016. Jeffrey's assertion is convoluted and difficult to understand, but, as best we can surmise, Jeffrey's argument is as follows. The parties owned a substantial amount of real estate before, and while, the divorce was pending. According to Jeffrey, in years before the divorce was initiated, losses from the real estate "sheltered income from [Jeffrey's] other enterprises, in particular, the [La Bri] Group," so as to benefit the parties through the payment of less income tax. When the tax benefits of holding certain parcels of real estate were exhausted after several years, then that real estate was sold and other real estate purchased. The newly purchased real estate then sheltered income of the parties. During the pendency of the divorce, Angela placed lis pendens on the real estate owned by the parties. Jeffrey argued in the circuit court that those lis pendens blocked him from selling and purchasing real estate during the divorce so as to obtain income tax benefits as in previous years and, from that, the parties incurred what Jeffrey refers to only as "[h]undreds of thousands of dollars in income taxes …."

11

¶27     The circuit court denied Jeffrey's attempt to make Angela solely liable for the tax debt for the 2015 and 2016 years and made the following findings:

> There's no evidence, for instance, that Mr. La Bri sought court approval to [remove] the lis pendens off or to structure a real estate transaction model that would have permitted the transfer of the real estate sought to be sold or transferred out of his holdings to bring new real estate in, while at the same time protecting the sanctity of the lis pendens from the standpoint of [Angela].
>
> ….
>
> The Court is satisfied that Mr. La Bri's claim of harm at Mrs. La Bri's hands, [the claim of] blocking his real estate investment opportunities from a tax standpoint as a real estate professional[,] fails.  If harm occurred, it was due to Mr. La Bri's failure to act and proceed on what would have been legitimate motives and a legitimate effort to achieve those transfers.  Harm has not been proved.

¶28     On appeal, Jeffrey argues that the circuit court hindered him from requesting relief from the lis pendens prior to trial because the circuit court barred "mini-trials" on various issues before the divorce trial.  However, the record shows that the circuit court did no such thing.  The circuit court at one point stated that, as to four discrete motions, none of which had anything to do with the real estate, the circuit court would hear those motions at the time of trial rather than having "mini trials" on each issue raised by those motions.  That order concerned only the four issues raised by those motions.  There is no basis to conclude that the circuit court hindered Jeffrey from filing a motion for relief from the lis pendens before trial, and Jeffrey's argument fails.

¶29     Therefore, we affirm the exercise of discretion of the circuit court which denied Jeffrey's request that Angela be solely responsible for the 2015 and 2016 tax liability.

## E. Jeffrey's Loan to Angela's Brother.

¶30    Jeffrey contends that the circuit court erred by, in effect, finding that a $150,000 loan from Jeffrey to Angela's brother had no value, and the circuit court erred by not making that loan amount part of Angela's share of the divisible property. Jeffrey appears to argue that the loan has "an ascertainable value" and the loan should have been awarded as an asset to Angela because, as Jeffrey sees it, Angela will collect the $150,000 from her brother.

¶31    Jeffrey does not dispute that, in an action separate from this divorce, he sued Angela's brother for non-payment of that loan, and a Waukesha County Circuit Court dismissed Jeffrey's lawsuit with prejudice based on a statute of limitations defense asserted by Angela's brother. Accordingly, the circuit court reasonably determined in this divorce that the loan had no value because any future attempt at collection of the loan will be barred by the result in that lawsuit. Further, Jeffrey cites no evidence in the record that could lead to a factual finding that, at a later date, Angela's brother will pay any amount to Angela because of that unpaid loan. Therefore, we conclude that the circuit court properly exercised its discretion in regard to the loan.

## F. Seek Work Order.

¶32    Jeffrey argues on appeal that Angela refused to obtain work during the divorce after being ordered to seek work and, as a result, she should be, according to Jeffrey, "sanctioned" in a manner not delineated by Jeffrey. More specifically, the circuit court refused to grant Jeffrey's motion to have Angela found in contempt of court because Angela did not become employed during the divorce. Jeffrey argues that this was an error by the circuit court. We disagree.

13

¶33    While the divorce was pending, the family court commissioner ordered Angela to "actively and diligently seek work." Angela did not become employed while the divorce was pending. Jeffrey filed a motion to have Angela held in contempt for failing to comply with that order. The circuit court ordered that Jeffrey's motion would be taken up at the time of trial. The circuit court refused to hold Angela in contempt for her failure to obtain employment while the divorce was pending. The court found that there was insufficient evidence that there were specific employers who would have offered Angela a job during the divorce:

> We had Tim Riley [an expert regarding Angela's earning capacity] in court talking about what she could make as an engineer, which is fine looking at it from an imputed income standpoint, but nobody came in and said what jobs are really out there, could she have gotten a job [during the divorce].

¶34    On appeal, the only evidence Jeffrey relies on for the proposition that Angela violated the family court commissioner order is the expert testimony from the trial regarding Angela's earning capacity referred to by the circuit court in its ruling. Jeffrey does not make an argument based on Angela's alleged lack of attempts to seek work. Rather, Jeffrey refers only to the fact that Angela failed to obtain a job during the divorce.

¶35    We affirm the circuit court's finding of fact that there was insufficient evidence to support Jeffrey's allegation that there were jobs available to Angela in the area where she was living that she would have been qualified for and for which she would have received an offer of employment. It was not unreasonable for the circuit court to conclude that testimony about a party's earning capacity is distinguishable from testimony regarding specific jobs available to Angela.

¶36    For those reasons, we affirm the decision of the circuit court.

## G.  Valuation of La Bri Family Trust.

¶37    Next, Jeffrey argues that the circuit court erred in determining the value of a trust.  We reject Jeffrey's argument and affirm the decision of the circuit court.

¶38    The 2005 La Bri Family Trust is an irrevocable trust that has life insurance policies as assets, and those policies had cash surrender value.  During the pendency of the divorce, Angela borrowed $110,440 from the trust, leaving trust assets in the amount of $23,560.

¶39    At trial, the circuit court determined that the value of the irrevocable trust was $23,560.  The court also exercised its discretion in deciding that the $110,440 loan to Angela, which was not repaid, would not be included in the calculations to balance the property division.[8]  The circuit court exercised its discretion in that way because Jeffrey took substantial amounts of money from the parties' accounts during the divorce to pay for what Jeffrey claimed were living expenses.  The precise amount of funds taken by Jeffrey could not be determined but, nonetheless, these living expenses reduced the divisible property.  In light of Jeffrey's expenditures, the circuit court determined that it was equitable that the loan to Angela from the trust not be considered in the equalization calculation regarding the division of property.

---

[8] This decision had the effect of increasing by $55,220 (one-half of $110,440) the amount Jeffrey owed to Angela to equalize the property division.

¶40    Jeffrey does not argue that the circuit court erred because of a lack of evidence showing that the amount he took from the parties' accounts during the divorce was comparable to the amount Angela borrowed from the trust.  Rather, he argues on appeal that, because Angela used the money from the loan for her attorney fees, the court's exercise of discretion regarding the loan should be analyzed as an award of attorney fees.[9]  According to Jeffrey, because the circuit court did not make findings about Angela's need for attorney fees, the circuit court's decision should be reversed.

¶41    We reject Jeffrey's argument because the premise of his argument is that there was an award of attorney fees.  However, how Angela used the money is beside the point in reviewing the circuit court's exercise of discretion in equitably dividing property in this circumstance.

¶42    We reject Jeffrey's contention and conclude that the circuit court did not erroneously exercise its discretion.

### H.  Amount of Family Support.

¶43    In the circuit court, the parties agreed that the court should award family support rather than separate awards for child support and maintenance.  Jeffrey argues that the circuit court erred in determining the amount of family support that he owes Angela.

---

[9] Angela misstates the record in arguing that there is no basis in the record to conclude that the money from the trust loan was used to pay her attorney fees.  Angela's attorney represented to the circuit court during argument that the money from that loan was used to pay Angela's attorney fees.

16

¶44    Family support encompasses its component parts, child support and maintenance, in a single obligation. *Vlies v. Brookman*, 2005 WI App 158, ¶8, 285 Wis. 2d 411, 701 N.W.2d 642. A family support award should be based on the same criteria used to fashion child support and maintenance orders. *Id.*, ¶14. This court overturns a circuit court's family support award only if there was an erroneous exercise of discretion. *Id.*, ¶13. A discretionary decision is sustained if it is based upon the facts of record and relies on the appropriate standard of law. *Id.*

¶45    For context, we now set out facts material to the circuit court's determination of the amount of family support.

¶46    The court awarded sole legal custody of the minor child of the parties to Angela with times of supervised physical placement to Jeffrey.

¶47    The circuit court made the following findings regarding Angela's income, and Jeffrey does not contend in this court that the circuit court's determination of Angela's income was incorrect. $60,000 of earned income was imputed to Angela. The circuit court also determined that, from the property division equalization payments from Jeffrey, Angela will have $2,000,000 to invest. That amount, at a five percent interest rate, will produce investment income for Angela of $100,000 per year, for a total income of $160,000 per year for Angela.

¶48    The circuit court found that Jeffrey has $300,000 earned income per year and yearly investment income of $493,000, for a total yearly income of $793,000. Jeffrey does not dispute, in this court, the circuit court's findings regarding his income.

17

¶49 As mentioned, one component of family support is child support. In setting child support, a circuit court must set family support at an amount consistent with the factors on child support presented in WIS. STAT. § 767.511 and the child support guidelines in WIS. ADMIN. CODE ch. DCF 150 (June 2019).[10] *See Vlies*, 285 Wis. 2d 411, ¶¶15-16. In setting the child support component of family support, the circuit court considered calculations from the parties regarding § 767.511 and ch. DCF 150 and set the child support component of family support at $7,322 per month. Jeffrey does not contend on appeal that the circuit court's determination of the child support component of family support is inconsistent with § 767.511 or ch. DCF 150.

¶50 The circuit court then determined the maintenance component of family support. We need not detail the lengthy and substantive findings of fact from the circuit court related to maintenance, but we note the following. In its analysis, the circuit court explicitly considered and made findings regarding each of the statutory factors concerning maintenance set forth in WIS. STAT. § 767.56. The circuit court considered the calculations submitted by the parties regarding the income tax effects on Jeffrey and Angela from the payment and receipt of family support. The court also considered the calculations from the parties concerning the amount of disposable income each party would have available to them based on various family support amount scenarios. After considering those facts and factors, the circuit court set the maintenance component of family support at $11,728 per month, making Jeffrey's family support obligation to Angela $19,050 per month.

_____

[10] All references to the Wisconsin Administrative Code ch. DCF 150 are to the June 2019 version unless otherwise noted.

¶51    Jeffrey advances three arguments regarding the amount of family support awarded, and we reject each.

¶52    First, Jeffrey argues that the amount of family support he must pay is an unreasonable hardship on him, while Angela has a disproportionately higher standard of living than he has.  However, Jeffrey gives no citation to the record to support the factual contention that the family support award will produce disparate standards of living.  That, alone, is enough for us to reject Jeffrey's argument.  *See* ***State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider ... arguments that lack proper citations to the record").  At any rate, we reject Jeffrey's contention on the merits.  Jeffrey does not dispute, and the circuit court found that, after paying family support, Jeffrey will have available to him 56.4% of the parties' disposable income, and Angela will have 43.6% of the parties' disposable income.  The minor child will be with Angela the majority of the time because Angela has sole legal custody of the minor child, and Jeffrey has supervised physical placement with the child.  Under those circumstances, we fail to see any factual basis for Jeffrey's assertion that Angela has a disproportionately higher standard of living than Jeffrey.  Jeffrey has a significantly larger amount of the disposable income of the parties, and Jeffrey has only one person in his household most of the time whereas Angela generally has two persons in her household with the attendant costs of two people.

¶53    Second, Jeffrey argues that the circuit court did not explain why the amount of family support awarded was reasonable or fair.  Jeffrey's argument consists of listing a few subjects the circuit court could have mentioned but did not.  The circuit court reviewed the applicable statutory and administrative regulation factors regarding both child support and maintenance, made factual

19

findings that Jeffrey does not dispute, considered the detailed family support proposals made by the parties, and exercised its discretion in a way that awarded less than 44% of the disposable income of the parties to Angela. Without an explanation from Jeffrey as to why the circuit court's analysis was wrong, we fail to see any reason to overturn the circuit court's exercise of discretion regarding the amount of family support awarded.

¶54    Finally, Jeffrey argues that the circuit court did not, in setting family support, sufficiently consider the "additional expenses" that he will have because he owes a $3,880,687 property division equalization payment to Angela. This large cash equalization payment was necessary to comply with Jeffrey's request that he be awarded the vast majority of the divisible assets, which naturally required cash equalization on this scale. Jeffrey also agreed that he should pay family support. Angela argues that the court gave Jeffrey what he wanted, and now he complains about it. We agree.

¶55    Moreover, Jeffrey does not explain how his property division equalization payment to Angela should have affected the circuit court's decision regarding family support. Without any such argument from Jeffrey, there is no basis on which we could conclude that the circuit court erroneously exercised its discretion.

¶56    In sum, we affirm the circuit court's decision regarding the amount of family support to be paid from Jeffrey to Angela.

### I.  Term of Family Support.

¶57    Finally in the appeal, Jeffrey contends that the circuit court erroneously exercised its discretion by setting a twelve-year term for his family

support payments. Because of the age of the minor child of the parties, the child support component of family support will end well before the twelve-year term set by the circuit court, leaving only maintenance payments form Jeffrey to Angela. Accordingly, we consider, as did the circuit court, the twelve-year term as a limit only on the term of the maintenance payments from Jeffrey to Angela.

¶58 The term of maintenance is left to the discretion of the circuit court and will be upset only if there is an erroneous exercise of discretion. *See Wikel v. Wikel*, 168 Wis. 2d 278, 282, 483 N.W.2d 292 (Ct. App. 1992).

¶59 The circuit court made the following findings regarding the term of maintenance. The court considered whether there should be an indefinite term of maintenance but was satisfied that was not necessary for Angela to be able to "maintain her lifestyle." In addition, the court determined that other reasons to not have indefinite maintenance are the size of the marital estate and that it had been divided equally. The court also considered the length of the marriage and that, at some point, Jeffrey's maintenance payments to Angela should end. The circuit court noted that, when the child support component of family support ends, about three years after the circuit court's decision, "that would call for a re-evaluation of the maintenance." In other words, during the twelve-year term of maintenance Jeffrey may request a lessening or termination of maintenance based on changes in the financial circumstances of the parties. *See* WIS. STAT. § 767.59(1f). The circuit court then set the term, based on what was known at the time of trial, at twelve years.

¶60 We reject Jeffrey's argument for the following reasons. First, Jeffrey has not stated either how that exercise of discretion by the circuit court was incorrect or what alternative term of maintenance the circuit court should have

21

awarded. Therefore, Jeffrey's argument is undeveloped and we need not consider it further. *See* ***Pettit***, 171 Wis. 2d at 646-47 (court of appeals will not consider undeveloped arguments). Second, Jeffrey has not, in his reply brief on his appeal, responded to the arguments of Angela supporting the term of the maintenance set by the court and, as a result, we consider Jeffrey to have conceded the argument. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that a failure to refute an argument constitutes a concession). Third, we reject Jeffrey's argument because we conclude that the circuit court considered appropriate factors and reasonably exercised its discretion in setting the term of maintenance.

¶61 For those reasons, we affirm the circuit court on all issues raised in Jeffrey's appeal. We now consider the issues raised in Angela's cross-appeal.

### III. Angela's Cross-Appeal.

### A. Angela's Claim of Waste of Marital Assets.

¶62 Angela alleged in the circuit court that Jeffrey committed waste by purchasing, within an approximately three-year period while the divorce was pending, vast amounts of liquor. The circuit court rejected Angela's claim of waste. Angela appeals, and we affirm the circuit court on this issue.

#### *1. Standard of Review.*

¶63 In ***Covelli v. Covelli***, 2006 WI App 121, 293 Wis. 2d 707, 718 N.W.2d 260, we discussed the standard of review concerning the division of property, including claims of waste. "The division of the marital estate is discretionary and we will sustain it if the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process,

reached a conclusion that a reasonable judge could reach." *Covelli*, 293 Wis. 2d 707, ¶13 (citing *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987)). We will not overturn findings of fact regarding a waste of marital assets issue unless those findings are clearly erroneous. *Id.* (citing *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999)).

### *2. Waste.*

¶64 In dividing the property of the parties in a divorce, the court may consider each party's contribution to the marriage and, more particularly, "each party's efforts to preserve marital assets." *Id.*, ¶29 (quoting *Anstutz v. Anstutz*, 112 Wis. 2d 10, 12, 331 N.W.2d 844 (Ct. App. 1983)). "The court may require a party to pay the debts arising from his or her squandering of marital assets or the intentional or neglectful destruction of property." *Id.* (citing *Anstutz*, 112 Wis. 2d at 12-13).

### *3. Analysis.*

¶65 Jeffrey does not dispute that, during a forty-two-month period while the divorce was pending, he spent a total of $1,030,302 on numerous bottles of liquor. Jeffrey does not dispute that the average amount that he spent on each bottle was approximately $2,000.

¶66 The circuit court made the following findings pertinent to Angela's claim of waste. Each of the liquor bottles in question was opened by the time of

trial.[11] There was no testimony regarding the value of specific bottles of liquor before they were opened and, once opened, each bottle no longer had any value. Jeffrey did not abuse alcohol. The circuit court found credible the testimony that Jeffrey bought the liquor for use in his business, which we take as referring to entertaining clients of the La Bri Group. The court made the following observations:

> It's an interesting issue because it's so much money on liquor and alcohol. It's almost an exotic issue. It could be a red herring-type issue too because it diverts attention from what is going on in the case…
>
>      ….
>
> … What has been presented as evidence is almost a shock value of large amounts of money spent on liquor.

The court then denied Angela's claim of waste.

¶67     Angela advances three arguments in her attempt to overcome the circuit court's finding of fact that, while having an initial "shock value," the liquor was used for business purposes and, as a result, was not a waste of marital assets. We reject each argument.

¶68     First, Angela argues that all the purchased liquor could not have been used for business purposes because Jeffrey's accountant, in an income tax return for the parties, noted a business expense deduction of only $100,000 for the cost of alcohol during one of the years within the forty-two-month period in which the disputed liquor was purchased. However, Angela does not explain how a

---

[11] Angela admits in her cross-appeal brief in chief that "[Jeffrey] also testified that all his bottles of liquor were opened …." At other points of the same brief, Angela argues that the bottles were not opened. But, Angela points to no place in the record that could upset the court's finding of fact on this point.

determination by an accountant, which may have been made based on an Internal Revenue Service regulation, is dispositive on the question of whether the circuit court had a basis to conclude that Jeffrey's purchase of the disputed liquor was for business purposes. In other words, Angela does not explain why an IRS regulation, or an accountant's opinion, about a limit on the amount of liquor that can be deducted for income tax purposes changes the fact that Jeffrey purchased the alcohol for business purposes. On this ground, we reject Angela's argument.

¶69 Second, Angela argues that, because some of the liquor was purchased through Jeffrey's personal accounts rather than through business accounts, the liquor could not have been purchased for business purposes. We reject Angela's contention because it does not undermine the circuit court's finding of fact. The circuit court implicitly determined that the liquor was purchased for business purposes even though Jeffrey sometimes wrote out a personal check or purchased it using a personal credit card, and we see no basis to overturn that finding.

¶70 Finally on this issue, Angela argues very briefly that the liquor could not have been used for business purposes because Jeffrey testified at trial that he "collected" high-end liquor. We will assume that Jeffrey testified to that effect. But, it was up to the circuit court to weigh the evidence and, here, the circuit court gave more weight to the testimony about using the liquor for business purposes than Jeffrey's testimony about collecting liquor. For this reason, we conclude that the circuit court's finding was not clearly erroneous.

¶71     Therefore, we affirm the circuit court's decision that Jeffrey's purchase of liquor during the marriage was not waste.[12]

## B. Cash Withdrawals by Jeffrey During the Divorce.

¶72     In the circuit court, Angela contended that Jeffrey should be charged with the $327,778 in cash that he withdrew from his bank accounts during the pendency of the divorce because Jeffrey did not account for the expenditures or provide receipts for how the money was spent.  Angela contends on appeal that the circuit court erred because it did not award to her an amount based on these expenditures by Jeffrey.  The circuit court made factual findings on this issue and denied Angela's request.

¶73     The only authority on which Angela bases her argument is WIS. STAT. § 767.63.   However, that statute applies only to assets "transferred for inadequate consideration, wasted, given away, or otherwise unaccounted for by one of the parties within one year prior to the filing of the petition …." Sec. 767.63.  As Angela concedes in her briefing, the amounts she now complains of were all spent by Jeffrey during the pendency of the divorce and not within one

---

[12] Angela argues, for the first time in her reply brief in the cross-appeal, that Jeffrey's purchase of the liquor was a violation of WIS. STAT. § 767.117 which prohibits "transferring, or otherwise disposing of property owned by either or both of the parties, without the consent of the other party or an order of the court" during the pendency of the divorce.  We need not consider arguments made for the first time in a reply brief, Jeffrey did not have an opportunity to respond to that argument, and we reject the argument for those reasons. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶30 n.6, 305 Wis. 2d 658, 741 N.W.2d 256 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief." (quoting *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661)).

year prior to the filing of the petition for divorce. As a result, Angela's argument fails for a lack of support.[13]

¶74    In sum, we affirm the circuit court on all issues raised in the cross-appeal.

## CONCLUSION

¶75    For these reasons, we affirm the judgment and the order of the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] For the first time in her reply brief regarding the cross-appeal, Angela makes a brief reference to WIS. STAT. § 767.117(1)(b). Again, we need not consider arguments made for the first time in a reply brief, Jeffrey did not have an opportunity to respond to that argument, and we reject the argument for those reasons. *See **Roy**, 305 Wis. 2d 658, ¶30 n.6.