STATE of Wisconsin,
Plaintiff-Respondent,

v.

Ricky McMorris,
Defendant-Appellant.††

Court of Appeals

*No. 2006AP772–CR. Submitted on briefs May 9, 2007.
—Decided September 5, 2007.*

2007 WI App 231

(Also reported in 742 N.W.2d 322.)

† Petition to review filed.

79

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Walter W. Stern* of *Law Office of Walter W. Stern*, Union Grove.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, C.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Ricky McMorris appeals from a judgment convicting him of being a felon in possession of a firearm as a repeater. He also appeals from an order denying his multiple motions for post conviction relief. McMorris, who faced two felony charges but was convicted on just one, alleges several errors occurred in the circuit court. He contends that he was denied his constitutional right to his counsel of choice when the circuit court refused to adjourn a motion hearing and a trial date in order for his new attorney to prepare. He also argues that the circuit court failed to engage in a colloquy, as required by *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), to confirm that McMorris knowingly and voluntarily waived his right to counsel. Our review of the record assures us that McMorris's constitutional rights were not violated when he was denied his choice of counsel. Furthermore, because he did not waive his right to counsel but rather forfeited it, the court was not required to engage in a *Klessig* colloquy before McMorris proceeded pro se. We therefore affirm the judgment and order of the circuit court.

## BACKGROUND

¶ 2. This case involved three trials, scads of motions, an interlocutory appeal and six defense attorneys, each of whom represented McMorris at some point during the litigation. Though the procedural history of this case is tortuous, the following relevant facts can be culled from the record.[1]

---

[1] The State's response brief sets out the factual history regarding McMorris's legal representation in various proceedings. McMorris adopts the State's recitation of these facts in his reply brief. This court appreciates the State's effort to provide this background in a concise and accurate way.

¶ 3. The State originally charged McMorris with armed robbery and with being a felon in possession of a firearm as a repeater. At the first trial, which began April 1, 2002, Charles McMorris, a key witness and Ricky McMorris's brother, invoked his Fifth Amendment right not to incriminate himself before the jury multiple times during his testimony. The circuit court declared a mistrial. Throughout this trial, McMorris was represented by Attorney Robert Keller. On May 14, 2002, after the mistrial was declared, Keller moved to withdraw, citing a breakdown in the attorney-client relationship and McMorris's request that Keller withdraw. The circuit court granted the motion.

¶ 4. The State Public Defender (SPD) then appointed Attorney Russell Bohach to represent McMorris. Bohach moved to withdraw on December 3, 2002, stating that the attorney-client relationship no longer existed and that an irreparable conflict of interest prevented him from effectively representing McMorris. Bohach averred to the court that McMorris refused to listen to advice regarding trial strategy, refused to assist with trial preparation, and threatened litigation against Bohach. The conflict appears to have initiated from McMorris's insistence that Bohach file a motion that Bohach believed was frivolous and contrary to his ethical obligation to the court. The circuit court granted Bohach's motion to withdraw and ordered the SPD to appoint successor counsel.

¶ 5. On January 23, 2003, the SPD appointed Attorney Corey Chirafisi, who moved to withdraw on March 28. Chirafisi stated that, "should he continue in representation [of McMorris], he may be in violation of S.C.R. 20:1.16(a)(1)."[2] At the motion hearing, the SPD

---

[2] "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representa-

opposed the motion, stating that the attorney, rather than the client, was in control of trial strategy, including deciding which motions to file. Chirafisi responded that his concerns went beyond trial strategy. The circuit court granted Chirafisi's motion to withdraw on May 15, 2003.

¶ 6. The next attorney to represent McMorris was Richard Jones. Jones took up representation of McMorris because the SPD was unable to find another attorney on its appointment list in Racine, Kenosha, Milwaukee or Madison who would accept the case. As a result, Jones, an SPD staff member, became McMorris' fourth attorney.

¶ 7. On August 25, 2003, McMorris filed a motion for recusal of the judge, a motion to dismiss on double jeopardy grounds, and a motion to resolve the potential conflict of interest alleged by the State to exist between McMorris and his attorney.[3] Shortly thereafter, McMorris filed another motion, this time requesting the removal of the assistant district attorney from the case and appointment of a special prosecutor. At the motion hearing on September 3, the court granted the motion for recusal and the case was reassigned.

¶ 8. Now before a new judge, Jones moved to withdraw as counsel for McMorris, stating that McMorris was not eligible for SPD representation because he was no longer indigent. McMorris followed with a

tion of a client if: the representation will result in violation of the Rules of Professional Conduct or other law[.]" SCR 20:1.16(a)(1) (2007).

[3] The State alleged that a conflict may have existed because two of the State's witnesses in the McMorris case had previously been represented in other matters by Attorney Jones' SPD colleagues.

motion for court-appointed counsel. On October 29, 2003, the court appointed Attorney John Cabranes as McMorris's fifth attorney.

¶ 9. Attorney Cabranes appeared with McMorris at a motion hearing on December 8, where the court was prepared to take up his motion to dismiss both charges on double jeopardy grounds. As it turned out, Cabranes informed the court that he needed more time to locate witnesses and to prepare his arguments and the prosecutor informed the court that he was feeling quite ill that day. The court decided to continue the motion hearing to Friday, December 12. When the court was about to end the hearing, McMorris asked to speak. He questioned the reasons for the adjournment and stated his understanding, based on what Cabranes had told him "in the hallway," that the adjournment had a purpose other than that stated on the record. Cabranes denied that the request for an adjournment had any motive other than that already indicated to the court and denied that he had told McMorris differently. The subsequent on-the-record exchange indicated that Mc-Morris felt he had been misled by Cabranes. Cabranes insisted McMorris clarify his accusation. The court asked McMorris if he wanted Cabranes to continue to represent him, and McMorris answered, "If he continues to mislead, no, I don't want him."

¶ 10. The court took a short break, after which Cabranes requested he be allowed to withdraw. The State agreed that, based upon the statements McMorris made in court, the request should be granted. McMorris, while insisting that Cabranes had lied to him, stated that he still wanted Cabranes to represent him. The circuit court then stated, "I am going to grant the motion to withdraw as I believe that Mr. McMorris, by

vociferously setting forth his opinion that Mr. Cabranes was lying," placed Cabranes in a situation where he had no choice but to withdraw.

¶ 11. The circuit court went on to consider whether it would appoint successor counsel and allowed the State and McMorris to argue their positions. The State rested on prior arguments it had made, contending that McMorris had forfeited his right to counsel. McMorris countered that he needed counsel and that he knew of another attorney who would take the case. McMorris indicated that he had been keeping in contact with Attorney Walter Stern daily and was convinced that Stern would represent him. Holding that McMorris had forfeited his right to counsel, the court stated that "McMorris's actions essentially have frustrated the orderly and [efficient] progression of this case and I believe been designed to create yet another delay in these proceedings." The court informed McMorris that he could retain Stern as his attorney but that the motion hearing and trial date would not be changed.

¶ 12. Stern appeared with McMorris at the motion hearing that Friday, December 12, 2003. The court noted that it would take up the double jeopardy motion and also an evidentiary issue raised by McMorris. Before arguments could take place, however, Stern told the court that he had been retained by McMorris only the day before and requested an adjournment of thirty days to review the file before arguing the motions. The court, having been advised by McMorris on December 8 that Stern was familiar with the case, advised Stern that a trial date was approaching, restated its concern about further delay of the case, and told Stern that the motion hearing would therefore proceed. Stern then requested permission to withdraw. The court addressed McMorris, reminding him that at the hearing on De-

cember 8 it had made clear that the motion hearing would go forward on December 12. McMorris acknowledged that the court had made that clear. The court granted Stern permission to withdraw.

¶ 13. The case went to trial for a second time on January 26, 2004. McMorris appeared without counsel. After hearing nearly five days of testimony, the jury returned a verdict finding McMorris guilty on the charge of felon in possession of a firearm, but it was unable to reach a verdict on the armed robbery charge. The court declared a mistrial as to the armed robbery charge and McMorris again moved to dismiss the charge based on double jeopardy. The circuit court again denied his motion and we upheld the court's ruling in *State v. McMorris*, No. 2004AP1109–CRLV, unpublished slip op. (WI App May 25, 2005).

¶ 14. Stern then returned as legal counsel for McMorris. He filed and argued motions on McMorris's behalf, including a motion to dismiss notwithstanding the verdict. McMorris, attempting to bar a third trial and to challenge the conviction for possession of a firearm, moved for judicial recusal, alleged prosecutorial vindictiveness, and argued for dismissal on double jeopardy grounds. McMorris specifically challenged the court's determination that he had forfeited his right to counsel and that he was competent to proceed pro se. The circuit court held that the record supported its findings and denied all of the motions put forth by McMorris. McMorris now appeals.[4]

---

[4] The third trial did take place. Though the record is incomplete, documents confirm that a jury trial on the armed robbery charge occurred in September 2005. The jury was unable to reach a verdict. On December 2, 2005, the circuit court entered the judgment of conviction on the charge of felon in possession of a firearm and sentenced McMorris accordingly.

## DISCUSSION

¶ 15. McMorris presents two primary issues on appeal. First, he argues that the court violated his constitutional rights by denying him representation by his counsel of choice. Next, he contends that the court erred when it allowed him to proceed pro se without first engaging in a colloquy to ensure that he understood the risks of self-representation and that he was competent to represent himself. We take each issue in turn.

¶ 16. McMorris directs us to *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557 (2006), for the proposition that the circuit court improperly deprived him of his counsel of choice. In *Gonzalez-Lopez*, the Court explained that we derive the right to counsel from the Sixth Amendment, which provides that in criminal prosecutions the accused has the right to assistance of counsel for his or her defense. *Id.* at 2561. The Court stated that this right includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *Id.* McMorris argues that Stern was his counsel of choice, but that the circuit court denied him representation by forcing Stern to withdraw. He writes, "There is no question that on December 12, 2003, Attorney Walter W. Stern was ready, willing and able to represent [McMorris], but needed time to prepare for the case, i.e. thirty (30) days to prepare for the motion hearing and ninety (90) days to prepare for trial. The Court did not care."

¶ 17. The State counters that *Gonzalez-Lopez* teaches that the right to counsel of choice is not unlimited. Indeed, the circuit court has "wide latitude in balancing the right to counsel of choice against the

needs of fairness, and against the demands of its calendar." *Id.* at 2565–66 (citations omitted). Thus, a defendant has only a presumptive right to employ his or her own chosen counsel. *See Wheat v. United States*, 486 U.S. 153, 159 (1988); *State v. Keenan*, 689 N.E.2d 929, 937 (Ohio 1998). "A defendant may, by his or her conduct, forfeit the right to counsel." *State v. Coleman*, 2002 WI App 100, ¶ 16, 253 Wis. 2d 693, 644 N.W.2d 283.

¶ 18. Decisions related to the substitution of counsel are within the sound discretion of the circuit court. *See Wheat*, 486 U.S. at 164. The precise issue here is whether the trial court erroneously exercised its discretion when it concluded that McMorris had, by his conduct, forfeited his right to counsel. "[W]here the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision . . . ." *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991) (footnote omitted). In making a determination whether to allow the accused's counsel of choice to participate, the circuit court must balance the right to counsel against the public's interest in the prompt and efficient administration of justice. *State v. Lomax*, 146 Wis. 2d 356, 360, 432 N.W.2d 89 (1988) (the court should strike a proper balance between the defendant's constitutional right to counsel and society's interest in efficient administration of justice).

¶ 19. Several factors assist the court in balancing the relevant interests, for example: the length of delay requested; whether competent counsel is presently

available and prepared to try the case; whether prior continuances have been requested and received by the defendant; the inconvenience to the parties, witnesses and the court; and whether the delay seems to be for legitimate reasons or whether its purpose is dilatory. *See id.* The court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonazalez-Lopez*, 126 S. Ct. at 2566 (citation omitted).

¶ 20. Here, the circuit court recognized McMorris's right to counsel, but balanced that against the inconvenience suffered by the victims over the three-year delay. At a motion hearing on May 2, 2003, a representative of the victimized credit union and its employees raised concerns about the delay, stating in relevant part:

> I'm here as the victim in this case representing my two employees, which have been traumatized in this robbery of December of 2000.

> This case has gone through two judges and four lawyers for Mr. McMorris. Over a 28–month period, I have over 30 motion hearings here. I haven't attended all of them, but I stayed in touch with the victim/witness office and know what transpired at each.

> . . . .

> I just want the Court to know the toll this has taken on my staff knowing this man has been walking the streets and living . . . four blocks away for the last 19 months . . . .

> We've installed a $55,000 security entry system or both of those women that worked for me were going to quit their jobs. They were only employed because we

had to spend that amount of money to make them feel secure in coming to work every day.

. . . .

I waited to push this issue at the last hearing before I went to push to have this taken back to the FBI if there is a way of doing it, and I will exhaust every effort. If we don't get this to court by June 11th, I will exhaust every piece of ammunition I have to get this to court immediately.

I've lost all faith in the local judicial system handling this case. I ask that you please . . . expedite it to its conclusion so we may go on with the rest of our lives.

At the December 12 hearing, the court observed that:

The burden on the victims today is tremendous. They have only a number of people running the credit union . . . . Mr. McMorris has subpoenaed the individuals from the credit union to be here, which means they have two people here now and they're going to have to rotate individuals back to the credit union so that they don't close it to interfere with business. They've been inconvenienced now for three years. Enough is enough.

The public's right to an efficient court system, along with the victim's right to fair administration of justice suffered badly.

¶ 21. In a forfeiture determination, the court must conclude that the defendant's conduct is intended to frustrate the efficient progression of the case. *Coleman*, 253 Wis. 2d 693, ¶ 18. When it decided the issue of whether McMorris forfeited his right to counsel, the court noted that McMorris's fifth attorney had just withdrawn as a result of McMorris's on-the-record accusation of lying. The court had warned McMorris

that the fifth attorney "was very likely . . . the last attorney appointed by this court." McMorris was on notice that he had tested the patience of the court. During the December 8 hearing, the court urged McMorris to obtain counsel, and warned him that it would not adjourn the December 12 motion hearing or the January 2004 trial; therefore, it had expected McMorris and his attorney to come prepared. The court made a detailed record of the history of McMorris's legal representation, found that McMorris's actions essentially frustrated the orderly and efficient progression of the case and that his actions were "designed to create yet another delay in these proceedings." The record amply supports the circuit court's determination that McMorris forfeited his right to counsel of his choice.

¶ 22. McMorris next contends that the circuit court erred when it failed to engage in an on-the-record colloquy to confirm that McMorris understood the risks of proceeding pro se and that McMorris was competent to do so. McMorris directs us to *Klessig* for support of his contention. *Klessig* states that when a defendant seeks to waive his or her right to counsel and proceed pro se, the circuit court must ensure the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. *Klessig*, 211 Wis. 2d at 206. McMorris argues that no such colloquy occurred and that the record establishes that he never made a deliberate choice to proceed without counsel.

93

¶ 23. McMorris fails to appreciate the subtle, but key, distinction between a waiver of the right to counsel and the forfeiture of the right to counsel. In the case of a forfeiture, the waiver of counsel and deliberate choice to proceed pro se occur, not by virtue of an express verbal consent from the defendant, "but rather by operation of law because the defendant has deemed *by his [or her] own actions* that the case proceed accordingly." *State v. Woods*, 144 Wis. 2d 710, 715–16, 424 N.W.2d 730 (Ct. App. 1988). In *Woods*, we held that a defendant forfeited the right to counsel when his or her actions frustrated "the orderly and efficient progression" of the case. *Id.* at 715.

¶ 24. Subsequently, the supreme court considered another case where, "although [the defendant] was continuously and unreasonably dissatisfied with each of his attorneys . . . he was also unwilling to voluntarily waive his right to counsel." *State v. Cummings*, 199 Wis. 2d 721, 750–51, 546 N.W.2d 406 (1996). The *Cummings* court observed that these tactics "cannot be condoned when they are used solely to 'interfere with the proper administration of criminal justice.'" *Id.* at 757. In a footnote, the *Cummings* majority recommended that circuit courts take certain steps to determine whether a defendant has forfeited the right to counsel. *Id.* at 756, n. 18. Those steps are to:

> (1) [provide] explicit warnings that, if the defendant persists in [specific conduct], the court will find that the right to counsel has been forfeited . . .;
>
> (2) [engage in] a colloquy indicating that the defendant has been made aware of the difficulties and dangers inherent in self-representation;
>
> (3) [make] a clear ruling when the court deems the right to counsel to have been forfeited; and

(4) [make] factual findings to support the court's ruling . . . .

*Coleman*, 253 Wis. 2d 693, ¶ 22.

¶ 25. The State argues that these four inquiries are recommendations rather than requirements under *Coleman* and *Cummings*. Nonetheless, the circuit court complied with all four. It made specific factual findings to support a clear ruling that McMorris forfeited his right to counsel. The following excerpts from the record make clear that McMorris received all of the warnings required and was well aware of the difficulties and complexities he faced if he proceeded pro se. At a motion hearing on December 5, 2002, when Attorney Bohach moved to withdraw, the following exchange took place:

> COURT: I'm letting you know you have the right to a lawyer. We're going to do everything in our power to get you a lawyer but if it turns out that —
>
> MCMORRIS: If nobody want the case, I'm representing myself.
>
> COURT: That's what I'm afraid is going to happen, Mr. McMorris. If that happens, you have to know you're going to be held to the same standard with regard to the rules of procedure, rules of evidence, that any member of the Bar would be held to.

At a motion hearing on May 2, 2003, Attorney Chirafisi moved to withdraw and the court again warned McMorris he could end up trying the case pro se if he was unable to work with a lawyer:

> COURT: I know that Mr. McMorris considers himself to be well-versed in the law. And I know that he's come to [disagree] with a number of counsel that he's had in

95

the past over whether his perception of how it should proceed should prevail over the lawyer's perception of how it should proceed.

. . . .

I certainly believe I could make the finding that [McMorris] is competent to [try the case himself]. I mean, he has done a lot of things in the interim period when he didn't have lawyers, where he was, in fact, not represented, and he's done some things . . . . I suspect I could make that finding that he's competent to try the case himself. But I'm not sure that he wants to try the case himself. That's the dilemma that I have.

. . . .

Now, Mr. McMorris, what this does is it puts you in a position — situation where we're six weeks from trial. I have to refer the matter back to the Public Defender's Office. I don't know how long it's going to take them to either provide successor counsel or come in to petition and ask me that they be relieved from any responsibility because you have run through so many lawyers already.

. . . .

We're getting dangerously close, Mr. McMorris. I think you ought to give some serious thought to the possibility that you might end up trying this case yourself . . . . We've come close to this issue several times before, where I've indicated on the record the possibility that you may end up trying the case yourself. Do you recall that?

MCMORRIS: Yes, I do.

At a motion hearing on October 21, 2003, the court went through the history of McMorris's legal representation noting the reason each attorney withdrew and

96

the problems that arose in finding any other lawyer to represent McMorris. It noted that the attorneys indicated that McMorris wanted "to be calling the shots" in the case and stated:

> COURT: That appears to be the type of problem that Mr. McMorris has had with every counsel. And indeed, the statements made to [the prior judge] were that this was a case truly out of the ordinary but that Mr. McMorris was very insistent on having it handled the way he wished.
>
> I am doubtful that any attorney can be found for Mr. McMorris. I think this is very like the situation in *State versus Cunningham* when by conduct of the defendant, the defendant has really waived his right to counsel.
>
> . . . .
>
> I understand . . . Mr. McMorris, that we're potentially talking about your freedom and your right to a fair trial, and that's what I want to try to give you. But I am not going to do that in circumstances in which by your own actions you have created a situation in which we may not be able to find an attorney who is willing to represent you.

¶ 26. We are not persuaded by McMorris's claims of error. He received ample notice that his behavior was obstructing efficient progression of the trial and he was warned of the complexities of legal representation and that he would be held to the same standard as a licensed attorney. He led the court to believe that he would appear at the motion hearing on December 12, 2003, with legal counsel and prepared to proceed. It would be unreasonable to require a circuit court to engage in a colloquy to ensure that the defendant deliberately relinquished the right to counsel in circumstances where

the defendant will verbally insist he or she did not. In cases where the defendant's words are inconsistent with the defendant's conduct, such a colloquy would be farcical.

¶ 27. McMorris also raises two additional issues for review. Neither of these issues are adequately briefed or supported by citations to the record. For example, McMorris asserts that the circuit court erred in denying his motion for judicial recusal. He argues that the court "engaged in unacceptable and biased practices with respect to [McMorris's] right to counsel of his choice, the issue of self-representation, and the issue of forfeiture." In fact, we have located no less than three motions for recusal in the file. McMorris successfully moved for the recusal of the first judge. He then filed a "Motion to Recuse or Substitute All Racine County Judges." The court denied that motion prior to the December 12 hearing, and therefore prior to the court's ruling regarding forfeiture of counsel. In his brief, McMorris references the court's failure to address allegations of bias resulting in forfeiture of counsel in a hearing that took place April 12, 2004. That hearing, however, would have been for recusal of the judge from the third trial.[5]

¶ 28. McMorris also contends that he was denied his right to confront the witness, Charles McMorris, because the circuit court required him to follow a predetermined script as a substitute for cross-examination. He cites legal authority for the proposition that cross-examination is an essential element of the right to confront a witness and that the court has a

_____

[5] We assume that McMorris does not intend to appeal from orders relating to the third trial because the jury's inability to reach a verdict on the armed robbery charge was a favorable result for McMorris.

duty to accommodate the defendant's right of confrontation. *See, e.g., State v. Hoover*, 2003 WI App 117, ¶ 6, 265 Wis. 2d 607, 666 N.W.2d 74.

¶ 29. As the State explains, one might conclude from McMorris's brief that the State called Charles McMorris as a witness and the circuit court scripted McMorris's cross-examination. However, McMorris subpoenaed Charles and intended to call him as a witness. Furthermore, the circuit court was familiar with the events of the first trial, wherein Charles invoked his Fifth Amendment privilege against self-incrimination in front of the jury and the result was a mistrial. Therefore, in the second trial, Charles was questioned *voir dire,* out of the presence of the jury, to avoid a similar result. Charles's testimony and the circuit court's decision fill eighty-five pages of testimony, but McMorris has not provided a single citation to the record to support his argument that error occurred.

¶ 30. An appellate court is improperly burdened where briefs fail to properly and accurately cite to the record. In light of McMorris's inadequate briefing, we decline to address these remaining claims of error. *See* Wis. Stat. § 809.83(2) (2005–06). Compliance with the rules is required because as a high-volume intermediate appellate court, we cannot take time to sift the record for facts to support the appellant's arguments. *See State v. Pettit,* 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Furthermore, it is not this court's duty to develop legal arguments on behalf of the appellant. *See id.* Accordingly, we may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record. *See id.*

## CONCLUSION

¶ 31. The circuit court's decision to go forward with the motion hearing on December 12, 2003, and the trial on January 26, 2004, was a proper exercise of its discretion, even though McMorris's counsel of choice indicated he must withdraw given that timeline. McMorris had forfeited his right to counsel. When a defendant forfeits the right to counsel, the *Klessig* colloquy is not required; rather, the court should determine that the defendant, by his or her conduct, has forfeited the right to counsel. In *Coleman*, we offered guidance to circuit courts in making such a determination. *See Coleman*, 253 Wis. 2d 693, ¶ 22. Here, the court made a record of its findings, explained its reasoning, and properly decided that the proceedings should continue as scheduled. We therefore affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.