**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2019AP425**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV7391

**IN COURT OF APPEALS**
**DISTRICT I**

---

SKYRISE CONSTRUCTION GROUP, LLC,

    PLAINTIFF-APPELLANT,

  V.

GLOBAL WATER CENTER II, LLC,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: TIMOTHY M. WITKOWIAK, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Fitzpatrick, JJ.

¶1     FITZPATRICK, J.  Global Water Center II, LLC, engaged Catcon, Inc. to act as general contractor for a renovation project at a building owned by Global.  Catcon entered into a subcontract with Skyrise Construction Group, LLC, for Skyrise to perform some services for that project.  After several months of

work by Skyrise, Catcon terminated its subcontract with Skyrise. Skyrise then sued Global in the Milwaukee County Circuit Court for damages allegedly related to Skyrise's work on the renovation project. The circuit court granted Global's motion to dismiss and entered an order dismissing Skyrise's causes of action. Skyrise appeals, and we affirm the order of the circuit court.

## BACKGROUND

¶2      The following allegations are gleaned from Skyrise's first amended complaint.[1]

¶3      Global contracted with Catcon for Catcon to serve as general contractor for renovation of Global's five-story building in Milwaukee.[2] In turn, Catcon entered into a subcontract with Skyrise for Skyrise to perform services of carpentry, metal framing, and drywalling for the Project.[3]

¶4      Several months after Skyrise began performing services for the Project, Catcon issued to Skyrise a written notice terminating the Subcontract due to what Catcon contended were material contractual defaults by Skyrise. That notice directed Skyrise to cease work and vacate the Project work site. Skyrise refused to accept that direction from Catcon and continued sending its workers to the Project work site. Skyrise contended that, because it disagreed with the

---

[1] For convenience, we will refer to that pleading as "the complaint."

[2] We will now refer to that renovation work as "the Project" and the real estate where the renovation work took place as "the Project work site" or "the site."

[3] We will now refer to the written subcontractor agreement between Catcon and Skyrise as "the Subcontract." Skyrise attached to the complaint a document Skyrise alleges is a copy of the Subcontract, and Global does not dispute that allegation on appeal.

reasons given by Catcon to terminate the Subcontract, the termination of the Subcontract by Catcon was "void," and Skyrise had the right to continue work at the Project work site. Skyrise ultimately stopped sending its workers to the Project work site after Global sent Skyrise written notice that Skyrise must "cease and desist" sending its workers to the site.

¶5      Skyrise brought suit against Global in the circuit court for damages purportedly caused by Global related to Skyrise's work on the Project. Global filed a motion to dismiss Skyrise's complaint because it failed to state a claim upon which relief can be granted. *See* WIS. STAT. § 802.06(2)(a)6. (2017-18).[4] The circuit court granted Global's motion, and Skyrise appeals.

¶6      We will mention other material facts in the discussion that follows.

## DISCUSSION

¶7      Skyrise argues that the circuit court erred in concluding that each cause of action in the complaint failed to state a claim upon which relief can be granted. *See* WIS. STAT. § 802.06(2)(a)6. Skyrise also argues that the circuit court erred in not granting Skyrise's request for discovery. For the reasons discussed below, we reject Skyrise's arguments.

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

### I.  Standard of Review and Governing Principles
### Regarding Motion to Dismiss.

¶8      Whether Skyrise's complaint states a claim upon which relief can be granted is a question of law which we review *de novo*.  *Data Key Partners v. Permira Advisers, LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.

¶9      Global's motion to dismiss requires this court to consider the legal sufficiency of Skyrise's complaint.  *Id.*, ¶19; *see* WIS. STAT. § 802.06(2)(a)6.  The pleading standard we apply is "grounded" in the requirement of WIS. STAT. § 802.02(1)(a) that a complaint must contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief."  Sec. 802.02(1)(a); *Cattau v. National Ins. Servs. of Wis., Inc.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756.  "In order to satisfy … § 802.02(1)(a), a complaint must plead facts, which if true, would entitle the plaintiff to relief."  *Data Key*, 356 Wis. 2d 665, ¶21.  Put another way, a plaintiff, such as Skyrise, must "allege facts that plausibly suggest they are entitled to relief."  *Id.*, ¶31.

¶10     In determining the sufficiency of a complaint, courts must "accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom."  *Cattau*, 386 Wis. 2d 515, ¶4 (citation omitted).  However, "courts cannot add facts to a complaint, and do not accept as true legal conclusions that are stated in the complaint."  *Id.*, ¶5.  "[T]he sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled."  *Data Key*, 356 Wis. 2d 665, ¶31.  To state a

claim upon which relief can be granted, each element of a cause of action must be satisfied by well-pleaded facts. *See id.*, ¶21.

¶11    We now consider each claim in Skyrise's complaint.

## II.  Tortious Interference with Contractual Relationship.

¶12    Skyrise contends that Global tortiously interfered with Skyrise's subcontractual relationship with Catcon.  In this context, the elements of Skyrise's claim for tortious interference with a contract are:  (1) Skyrise had a contractual relationship with Catcon; (2) Global interfered with that contractual relationship; (3) Global's interference was intentional; (4) there was a causal connection between the interference and Skyrise's damages; and (5) Global was not justified or privileged in the interference. *See Briesemeister v. Lehner*, 2006 WI App 140, ¶48, 295 Wis. 2d 429, 720 N.W.2d 531.

¶13    Skyrise's argument can be summarized as follows.

- In its Subcontract termination notice to Skyrise, Catcon directed Skyrise to stop work on the Project and permanently remove its workers from the Project work site.

- Because Skyrise disagreed with Catcon's bases to terminate the Subcontract, the termination notice from Catcon was "void" and, accordingly, "under its [S]ubcontract with Catcon, [Skyrise] had the right (license) to enter the [Project work] site to finish the scope of its work under its [S]ubcontract."

- Global later sent written notice to Skyrise that its workers must "cease and desist" appearing at the Project work site, and any

5

continued appearance at the Project work site by Skyrise personnel would be "treated as criminal trespass."

- Skyrise stopped sending its workers to the Project work site.

- "But for" the notice from Global, Skyrise would have finished its work on the Project and been paid for that work pursuant to the terms of the Subcontract.

¶14   Global argues that Skyrise's cause of action fails because there is no causal connection between its actions and any damages Skyrise alleges. More specifically, Global asserts that Catcon's written Subcontract termination notice to Skyrise ended Skyrise's license to have its workers at the Project work site and complete work on the Project. Therefore, Global's later notice to Skyrise to "cease and desist" sending its workers to the Project work site could not have interfered with the Catcon-Skyrise Subcontract because the notice from Catcon had already ended Skyrise's legal right to be at the site and continue work. We agree with Global.

¶15   Before continuing our analysis, we address two preliminary matters. First, Skyrise argues that we must accept as true its allegations in the complaint that: (1) the Subcontract termination notice from Catcon was "void"; and (2) as a result, Skyrise had the right to continue entering the Project work site and finish its work on the Project. Those are legal conclusions, and legal conclusions need not be accepted as true in determining whether to grant a motion to dismiss for failure to state a claim. *See* ***Cattau***, 386 Wis. 2d 515, ¶5; ***Data Key***, 356 Wis. 2d 665, ¶19. Second, Skyrise's allegations in the complaint and arguments in this court profess to rely on the terms of the Subcontract. However, in the complaint and in the briefing before us, Skyrise does not cite to any specific provisions of the

Subcontract. In other words, Skyrise does not explain which particular portions of the Subcontract support its contentions. Therefore, we can reject Skyrise's arguments regarding the terms of the Subcontract because Skyrise fails to cite to the record in any meaningful way, and because we need not attempt to develop arguments for a party. *See **State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals may choose not to consider arguments that lack proper citations to the record, and "it is not this court's duty to develop legal arguments on behalf of" a party). Instead, we opt to consider the merits of the parties' arguments.

¶16 As noted, Skyrise contends that, under the terms of the Subcontract, it had a "license" to enter the Project work site and continue its work after receiving the Subcontract termination notice from Catcon. The undisputed terms of the Subcontract belie that contention. The only provision in the Subcontract which grants Skyrise any permission to have its workers at the site is Section 4.3 which reads, in relevant part: "*Unless otherwise directed by CATCON*, [Skyrise] shall … perform its Work consistent with the Project Schedule during CATCON's regular work hours of 7:00 a.m. to 3:30 p.m., Monday through Friday…." (Emphasis added.) That provision of the Subcontract establishes that Catcon "directed" and controlled when Skyrise could be at the Project work site.[5]

¶17 As a result, when Catcon gave the direction to Skyrise not to have its workers at the Project work site any longer, Skyrise's license to be at the site ended. That proposition inevitably leads to the conclusion that Global's "cease

---

[5] To confirm this point, in briefing in this court, Skyrise concedes that Global, "by contracting with general contractor Catcon, granted Catcon the right to control access to the [Project work] site."

and desist" notice to Skyrise to vacate the Project work site could not have caused any damage to Skyrise. Put another way, because Catcon had already validly exercised its Subcontract authority to order Skyrise to no longer have its workers at the Project work site, the "cease and desist" notice from Global to Skyrise can not be a cause of Skyrise's legal inability to be at the site, finish work on the Project, and be paid for that work.

¶18     Another necessary premise for this cause of action is Skyrise's assertion that Catcon's termination notice to Skyrise was "void" and, therefore, that notice was not a valid basis for Catcon's direction to Skyrise to vacate the Project work site. However, under the terms of the Subcontract, Skyrise did not have the option of continuing its work at the Project work site while disputing Catcon's termination.

¶19     Catcon terminated the Subcontract pursuant to Section 11.2 of the Subcontract, which states:

> **11.2 Termination by CATCON for Cause**:  *If Subcontractor a) fails to supply an adequate number of properly skilled workers*, b) disregards laws, ordinances, rules, regulations or orders of any government authority having jurisdiction, c) *fails to carry out Work in accordance with the Subcontract Documents*, and/or d) *fails to commence and continue correction of defective or deficient Work, then CATCON*, without prejudice to any other remedies it may have, upon three (3) days written notice to Subcontractor, *may terminate this Subcontract*, and use any equipment, materials and supplies at the Project Site furnished by or belonging to Subcontractor, employing such workers or contractors as CATCON deems necessary to properly and timely complete Subcontractor's Work.

(Emphasis added.)   The Subcontract also sets out the sole path for dispute resolution in Section 12, which states in pertinent part:

**12.1 Good Faith Negotiation**: *As a condition precedent to arbitration, any issue, dispute, or other matter in question arising out of or related to this Subcontract ("Claim") shall be subject to good faith negotiations by senior representatives of both parties having authority to compromise and settle the Claim. At least one (1) week before such a meeting, the party seeking resolution of a Claim shall submit to the other party a brief written statement identifying the issues in dispute and itemizing the amount of the Claim, along with supporting documentation necessary to understand the nature of the Claim.* The parties shall share the cost of meeting at a neutral location for these negotiations. Agreement reached as a result of these negotiations shall be reduced to writing, signed by the parties, and shall be enforceable as a settlement agreement in any forum having jurisdiction thereof. If CATCON asserts or defends a claim against the Owner that relates to the Work of the Subcontractor, the Subcontractor shall promptly make available to CATCON all information relating to the portion of the claim that relates to the Work of the Subcontractor.

**12.2 Arbitration:** The Subcontractor shall participate in and be bound by any dispute resolution process of the Prime Contract if named therein or if CATCON requires Subcontractor's assistance or testimony. *All other Claims that cannot be resolved by good faith negotiations, shall, at CATCON's sole option, be resolved by binding arbitration.*

(Emphasis added.)

¶20     As established by those provisions of the Subcontract, any disputes between Catcon and Skyrise were to be resolved by negotiations and, if that was unsuccessful, then by binding arbitration. The Subcontract does not include an option, after written notice of termination of the Subcontract by Catcon, for Skyrise to continue work at the Project work site because it disagrees with the stated basis for the termination.

¶21     For those reasons, Skyrise did not have a license to continue to have its workers go to the Project work site, and continue work on the Project, after

receiving notice of termination of the Subcontract by Catcon. Accordingly, Global's "cease and desist" notice to Skyrise was not a cause of any alleged damages to Skyrise, and Skyrise's intentional interference with a contractual relationship cause of action fails.

### III. Unjust Enrichment.

¶22 Skyrise alleges that Global has been unjustly enriched because Skyrise has performed subcontractor services that have improved the Project worksite owned by Global, and Skyrise has not been paid for those services. Global asserts that this cause of action must be dismissed because, in these circumstances, Global, an owner, cannot be liable to Skyrise, a subcontractor, under the theory of unjust enrichment.

¶23 In this context, the elements of an unjust enrichment cause of action are: (1) a benefit was conferred upon Global by Skyrise; (2) there was an appreciation or knowledge by Global of the benefit; and (3) the acceptance or retention by Global of the benefit under these circumstances makes it inequitable for Global to retain the benefit without payment of its value. *See **Puttkammer v. Minth***, 83 Wis. 2d 686, 688-89, 266 N.W.2d 361 (1978); ***Gebhardt Bros., Inc. v. Brimmel***, 31 Wis. 2d 581, 584, 143 N.W.2d 479 (1966). Our supreme court has underscored that a plaintiff, such as Skyrise, must show that the defendant's actions are inequitable. "It is not enough to establish that a benefit was conferred and retained; the retention must be inequitable." ***Puttkammer***, 83 Wis. 2d at 690.

¶24 Material to this appeal, the supreme court has also held, "we find no equity in favor of the plaintiff when the relationship of the plaintiff to the defendant is that of subcontractor to owner *and when the evidence indicates that the owner has either paid the general contractor for the benefits furnished or is*

*obligated to do so.*" **Gebhardt**, 31 Wis. 2d at 585 (emphasis added); *see also* **Puttkammer**, 83 Wis. 2d at 690. The parties agree that Global is the owner, Catcon is the general contractor, and Skyrise is a subcontractor. So, to survive Global's motion to dismiss, Skyrise must plausibly plead both of two allegations. *See **Data Key***, 356 Wis. 2d 665, ¶¶21, 31. First, Global has not paid Catcon for all subcontractor services provided by Skyrise for the Project and, second, Global is not obligated to pay Catcon for all subcontractor services provided by Skyrise for the Project. *See **Puttkammer***, 83 Wis. 2d at 690; **Gebhardt**, 31 Wis. 2d at 585.

¶25 Skyrise does not allege in its complaint, or argue on appeal, that Global is not obligated to pay Catcon for the subcontractor services provided by Skyrise. Without that allegation in the complaint, Skyrise's cause of action fails because it does not meet the pleading requirements set forth by our supreme court for an unjust enrichment claim brought by a subcontractor against an owner.

¶26 Skyrise may argue, for the first time in its reply brief, that the holdings of **Puttkammer** and **Gebhardt** discussed above are not controlling. Without saying so directly, Skyrise appears to argue in its reply brief that, in **S & M Rotogravure Service, Inc. v. Baer**, 77 Wis. 2d 454, 465, 252 N.W.2d 913 (1977), the Wisconsin Supreme Court eliminated the requirement of **Gebhardt** that, to state a valid unjust enrichment cause of action against an owner, a subcontractor must plead that the owner is not obligated to pay the general contractor for the subcontractor services. We reject Skyrise's argument for two reasons.

¶27 As noted, Skyrise raises this argument for the first time in its reply brief. In fact, in its initial brief in this court, Skyrise twice cited to the holding of **S & M Rotogravure** as "Wisconsin courts have allowed subcontractors to recover

directly from owners under [a theory of] … unjust enrichment when the owner has not paid, *and is not obligated to pay the general contractor for the work*." (Emphasis added.)  It would be inequitable to allow Skyrise to alter its argument in reply in light of the fact that it took a directly contrary position in its initial brief, and Global has not had a chance to respond to this new argument.  *See Northern States Power Co. v. National Gas Co., Inc.*, 2000 WI App 30, ¶21 n.6, 232 Wis. 2d 541, 606 N.W.2d 613 (1999) (declining to consider arguments made for the first time in a reply brief to which the respondent does not have the opportunity to respond).

¶28     Next, we do not read the holding of *S & M Rotogravure* as does Skyrise.  The *S & M Rotogravure* opinion does not state that it is abrogating any holding of *Gebhardt* as Skyrise implies.  Indeed, *S & M Rotogravure* cited with approval the "obligated to do so" language of *Gebhardt*.  *See S & M Rotogravure*, 77 Wis. 2d at 463 (quoting *Gebhardt*, 31 Wis. 2d at 585).  Moreover, the following year, our supreme court in *Puttkammer* clearly stated the holding noted above which included the "obligated to do so" language.  *See Puttkammer*, 83 Wis. 2d at 690.  Therefore, *Puttkammer* confirms Wisconsin law on this point.

¶29     Accordingly, Skyrise has failed to state a claim upon which relief can be granted against Global for unjust enrichment.

### IV.  Equitable Lien.

¶30     Skyrise's complaint requests the imposition of an equitable lien on the Project work site owned by Global based on the subcontractor services performed by Skyrise at that site.  Under Wisconsin law, when a statutory lien is available to a construction subcontractor such as Skyrise, an equitable lien is not available to the subcontractor when the subcontractor has waived its statutory lien

rights. *See **Industrial Credit Co. v. Inland G.M. Diesel, Inc.***, 51 Wis. 2d 520, 527, 187 N.W.2d 157 (1971); ***Utschig v. McClone***, 16 Wis. 2d 506, 509-10, 114 N.W.2d 854 (1962). Skyrise's complaint admits that Skyrise had available to it, pursuant to WIS. STAT. ch. 799, a statutory lien for payment of its services. Skyrise's complaint concedes that, pursuant to WIS. STAT. § 779.05(1), Skyrise granted lien waivers for those statutory liens.

¶31 Therefore, because Skyrise waived its available statutory lien, Skyrise does not have a valid request against Global for the remedy of an equitable lien.[6]

## V. Quantum Meruit.

¶32 Skyrise argues that it has stated a cause of action under the theory of quantum meruit. "To establish an implied contract [such as quantum meruit], the plaintiff must show that the defendant requested the services and that the plaintiff expected reasonable compensation." ***Ramsey v. Ellis***, 168 Wis. 2d 779, 784, 484 N.W.2d 331 (1992). Global argues that it never requested services from Skyrise and, for that reason, Skyrise's cause of action fails. We agree.

¶33 To repeat, the complaint alleges that Global, a limited liability company ("LLC"), contracted with Catcon, a corporation, for Catcon to act as general contractor for the Project. Catcon entered into the Subcontract with

---

[6] Because an equitable lien is not available to Skyrise in these circumstances, we need not decide a separate argument from Skyrise that Skyrise should have been granted by the circuit court the opportunity to obtain discovery on the equitable lien claim. *See **Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that if a decision on one point is dispositive, we need not address other issues raised).

Skyrise to provide subcontractor services for the Project. There is no allegation in the complaint that Global entered into any contract with Skyrise.

¶34    Nonetheless, Skyrise alleges in the complaint that it provided "goods and/or services" to Global "either directly or indirectly *at [Global's] request*." (Emphasis added.) To support that contention, Skyrise alleges that there was an "interconnected ownership and control relationship between the principals" of Global and Catcon because, according to Skyrise's complaint, "[o]n information and belief, one or more owners and/or managers of [Global] are also owners or managers of Catcon, Inc."[7] From those allegations, Catcon argues in this court that "the reasonable inference is that a request by Catcon" to Skyrise to provide construction services "is also a request by Global." For Skyrise's quantum meruit cause of action to survive Global's motion to dismiss, we would have to infer that, in effect, Global is the same entity as Catcon or that Global completely controls Catcon for the purposes of requesting services from Skyrise. No such reasonable inference can be made based on the allegations of the complaint.

---

[7] We pause to consider material attributes of LLCs under Wisconsin law and why some allegations of Skyrise cannot have any basis. "An LLC is 'an unincorporated association of investors, <u>members</u> in LLC parlance, whose personal liability for obligations of the venture is limited to the amount the member has invested.'" ***Marx v. Morris***, 2019 WI 34, ¶22, 386 Wis. 2d 122, 925 N.W.2d 112 (citation omitted); *see also* WIS. STAT. ch. 183. An LLC is formed by the filing of articles of organization. LLC members often adopt an "operating agreement" which becomes the principal governing document of the LLC. ***Marx***, 386 Wis. 2d 122, ¶26. The complaint alleges that there are "owners" or "managers" of Catcon that took certain actions. That allegation is not plausible because Catcon, a corporation, has "shareholders" rather than "owners" or "managers." *See **id.***, ¶23. In a similar vein, the complaint refers to "owners" of Global, an LLC. "Owner" is not a defined term in ch. 183 and is not a term used for a person or legal entity with an interest in an LLC. Granted, if there is an assignment of an interest in, or a merger of, an LLC then the term "owner" is used in ch. 183 in light of the fact that the assignment to, or merger, may be with another entity which may not be an LLC. *See* WIS. STAT. §§ 183.0404(4)(a) and 183.1205-1207. But, Skyrise does not rely on those portions of ch. 183, and we conclude that §§ 183.0404(4)(a) and 183.1205-1207 have no applicability to this issue.

¶35    First, there is nothing in the complaint to plausibly suggest that a group of shareholders, or any one shareholder, of Catcon affiliated in some way with Global, and has such complete control of Catcon that it is, in effect, the same legal entity as Global for purposes of requesting subcontractor services from Skyrise.  In support of that purported inference, Skyrise makes only conclusory arguments which we reject based on the insufficient allegations in the complaint.

¶36    Second, the complaint states no plausible allegations regarding the management of Global, the terms of any Global "operating agreement," or which persons or legal entity has an ownership interest in, or control of, Global.  As a result, there is no reasonable basis to infer from the complaint that there is any "ownership" or "control" relationship between Global and Catcon.

¶37    Based on the allegations of the complaint, there is no plausible basis to conclude that Global requested services of Skyrise.  Therefore, one of the elements of Skyrise's quantum meruit cause of action fails as does that cause of action.

## VI.  Constructive Trust.

¶38    Skyrise's complaint requests that a constructive trust be imposed on Global for payment of subcontractor services performed by Skyrise for the Project. We conclude that this request fails for the following reasons.

¶39    Skyrise apparently considers this portion of its complaint to be a separate cause of action of "constructive trust."  However, our supreme court recently held that a constructive trust is a remedy only and not a separate cause of

action. *Tikalsky v. Friedman*, 2019 WI 56, ¶22 (Kelly, J., lead), ¶45 (Ziegler, J., concurring), 386 Wis. 2d 757, 928 N.W.2d 502.[8]  Accordingly, to the extent Skyrise attempted to state a separate cause of action based on "constructive trust," that claim fails.

¶40     In the alternative, it may be that Skyrise intended to request the remedy of a constructive trust based on Skyrise's purported causes of action in the complaint.  As an example, ¶67 of the complaint reads:  "Defendant Global Water II, LLC also owes a debt, duty or obligation to Plaintiff Skyrise Construction as alleged in this … complaint … under one or more of Skyrise's claims for tortuous [sic] interference, unjust enrichment, quantum meriut [sic] and/or in equity."  Skyrise's request for the imposition of a constructive trust must fail because each of Skyrise's causes of action fails for reasons noted elsewhere in this opinion.

¶41     In sum, we conclude that the circuit court properly dismissed each of Skyrise's claims.

## VII.  Discovery on All Causes of Action.

¶42     Finally, Skyrise argues that the circuit court erred because there was "good cause" to allow discovery on all claims in Skyrise's complaint.  We reject this argument because Skyrise did not raise this issue in the circuit court and, therefore, Skyrise has forfeited the opportunity to raise this issue on appeal.

_____

[8] No one, of four, writings by the Justices of the Wisconsin Supreme Court gained a majority of the Justices.  However, at least four Justices concluded that constructive trust was a remedy and not a cause of action. *Tikalsky v. Friedman*, 2019 WI 56, ¶22 (Kelly, J., lead), ¶45 (Ziegler, J., concurring), 386 Wis. 2d 757, 928 N.W.2d 502.

¶43 WISCONSIN STAT. § 802.06(1)(b) states that, when a motion to dismiss for failure to state a claim is filed in the circuit court:

> [A]ll discovery and other proceedings shall be stayed for a period of 180 days after the filing of the motion or until the ruling of the court on the motion, whichever is sooner, unless the court finds good cause upon the motion of any party that particularized discovery is necessary.

Under that statutory subpart, because Global filed a motion to dismiss for failure to state a claim, Skyrise was not allowed to conduct any discovery unless Skyrise could show "good cause" for the circuit court to conclude that certain discovery was "necessary."

¶44 But, Skyrise never argued in the circuit court that there was "good cause" to allow discovery under WIS. STAT. § 802.06(1)(b). Skyrise's argument concerning "good cause" was raised for the first time in this appeal. Therefore, we conclude that this argument is forfeited because the circuit court never had an opportunity to exercise its discretion regarding any request for discovery. *See State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995) (a failure to raise a specific challenge before the circuit court may forfeit the right to raise that challenge on appeal).

## CONCLUSION

¶45 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

17